955 So.2d 200 (2007)
HISTORIC RESTORATION, INCORPORATED, as Insured and on Behalf of Additional Plaintiffs 302 Jefferson Street, L.L.C., 800 Canal Street Limited Partnership, 800 Iberville Street Limited Partnership, et al.
v.
RSUI INDEMNITY COMPANY.
No. 2006-CA-1178.
Court of Appeal of Louisiana, Fourth Circuit.
March 21, 2007.
*202 James M. Garner, Darnell Bludworth, Ellen Pivach Dunbar, Sher Garner Cahill Richter Klein & Hilbert, L.L.C., New Orleans, LA, for Historical Restoration, Inc.
Paul D. Palermo, Shannon Ruddy, Spyridon, Palermo & Dornan, L.L.C., Metairie, LA, for RSUI Indemnity Company.
(Court composed of Judge MICHAEL E. KIRBY, Judge TERRI F. LOVE, Judge MAX N. TOBIAS, Jr.).
TERRI F. LOVE, Judge.
This appeal arises from a commercial insurance policy dispute regarding Emergency Rule 23 promulgated by the Commissioner of Insurance for the state of Louisiana after Hurricanes Katrina and Rita regarding the suspension of the right to cancel or nonrenew property insurance policies. Historic Restoration, Incorporated alleged that RSUI Indemnity Company violated Emergency Rule 23 by increasing the policy premium and changing policy terms without justifiable or objective criteria. Historic Restoration, Incorporated filed for a temporary restraining order, preliminary injunctive relief, and a permanent injunction. The trial court granted a temporary restraining order and the motion for a preliminary injunction, ordered RSUI Indemnity Company to renew the policy according to the terms of the prior policy and for the former premium prior to Hurricanes Katrina and Rita, and held the bond fixed for the temporary restraining order, at $5,000 for the preliminary injunction. RSUI Indemnity Company appeals asserting the trial court erred by finding that it violated Emergency Rule 23, by finding that a private right of action existed *203 for Historic Restoration, Incorporated, that no other adequate remedy at law was available, by granting injunctive relief, and by holding that David Norris' affidavit submitted by RSUI Indemnity Company was conclusory. We find that the trial court did not err and affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
Historic Restoration, Incorporated[1] ("HRI") filed suit against RSUI Indemnity Company ("RSUI") alleging that RSUI failed to comply with Emergency Rule 23 ("ER 23") promulgated by the Louisiana Commissioner of Insurance after Hurricanes Katrina and Rita ("Hurricanes"). RSUI insured nineteen properties for HRI with an excess all risk commercial insurance policy from May 31, 2005 through May 31, 2006. The terms of that policy included a premium of $90,000. The terms also included primary limits and underlying excess limits of $10,000 per occurrence with a limit on the insured of $178,878,072 per occurrence. The policy covered buildings, personal property, business income/rental value, and extra expense. Sixteen of HRI's properties are located in Louisiana and nine of the properties sustained damage from these Hurricanes.
HRI had not completed all hurricane damage repairs when it requested to extend coverage until December 31, 2006, pursuant to ER 23. RSUI's renewal quote, from May 26, 2006, changed the property limits to $40,000,000 per occurrence as opposed to the previous amount of $178,878,072. The wind and hail deductible was changed to five percent and the coverage changed to the buildings, contents, improvement and betterments, and business income. The renewal premium was $925,000. As a result, HRI did not accept RSUI's quote and the policy expired on May 31, 2006. However, HRI mailed a check overnight for $108,000 to RSUI, the cost to renew its existing coverage under the same terms and conditions.
RSUI subsequently offered to extend HRI's coverage for a one-year term. On June 1, 2006, RSUI issued a binder, through Crump E & S out of Dallas, Texas, offering a policy from May 31, 2006 through May 31, 2007. The property limit was $213,743,077 per occurrence with an "in excess of" clause of $10,000,000 per occurrence. The policy included a five percent wind and hail deductible and covered "building, contents, improvements and betterments, and business income." The premium for the policy renewal was $1,125,000. On June 2, 2006, RSUI issued a corrected binder for a policy covering May 31, 2006 through May 31, 2007. RSUI changed the wind and hail deductible to one percent and covered "building, contents, improvement and betterments, and business income." The renewal quote reflected the same premium increase and was valid for ninety days. However, an e-mail, sent on June 12, 2006, from Bill Henning at RSUI indicated that RSUI was willing to decrease the premium to $370,000. RSUI indicated that it accepted HRI's $108,000[2] check as a down payment *204 on the second renewal quote. HRI indicated that it was not accepting any of the renewal quotes and intended that the $108,000 check be full payment for coverage from May 31, 2006 through May 31, 2007, under the same terms and conditions as the existing policy, pursuant to ER 23.
HRI filed a motion for a temporary restraining order and preliminary injunction seeking to enjoin RSUI from changing the terms and conditions of its existing insurance policy. The trial court granted the temporary restraining order and held a hearing on the preliminary injunction matter. The trial court found that RSUI violated ER 23 and granted HRI's motion for preliminary injunction. The trial court enjoined RSUI, "directly or indirectly, and whether alone or in concert with others, from changing the terms, conditions, or premium" for the renewal of HRI's policy. RSUI was also ordered to renew the existing policy, as of May 30, 2006, for the term of May 31, 2006 through May 31, 2007. HRI's temporary restraining order bond of $5,000 remained in place and became the bond for the preliminary injunction.[3] RSUI's timely appeal followed.
RSUI asserts multiple assignments of error regarding the trial court's finding of an alleged violation of ER 23, by providing HRI with a private right of action, and granting injunctive relief.

STANDARD OF REVIEW
Appellate courts review factual findings made by the trier of fact under the manifest error or clearly wrong standard. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Thus, if two reasonable views exist, the trier of fact's decision cannot be wrong. Id. To reverse, the appellate court must first find that a "reasonable factual basis does not exist" for the trier's findings and that the "finding is clearly wrong (manifestly erroneous)." Stobart v. State, Through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993).
Errors of law are reviewed de novo by the appellate courts. Balseiro v. Castaneda-Zuniga, 04-2038, p. 6 (La.App. 4 Cir. 8/17/05), 916 So.2d 1149, 1153. Reviewing courts examine preliminary injunctions by determining if the "trial court committed an error of law or made a factual finding which is manifestly erroneous or clearly wrong." Saunders v. Stafford, 05-0205, p. 5 (La.App. 4 Cir. 1/11/06), 923 So.2d 751, 754.

EMERGENCY RULE 23
The Louisiana Commissioner of Insurance adopted ER 23: "Suspension of right to cancel or nonrenew residential, commercial, residential or commercial property insurance due to Hurricane Katrina or Hurricane Rita," pursuant to his plenary authority, to protect Louisiana property holders. ER 23 went into effect on December 30, 2005. ER 23 applies to "insureds who, as of 12:01 a.m. on August 26, 2005 had a personal residential, commercial residential or commercial property insurance located in Louisiana" and those who, "as of 12:01 a.m. on September 20, 2005" and "who filed a claim as a result" of damage. ER 23, differentiating between policies and individual properties, § 4305 states that the cancellation or non-renewal of "any personal residential, commercial residential or commercial property insurance policy . . . is suspended and shall be prohibited." (Emphasis added). Further, it states that the suspension applies until "60 days after the substantial *205 completion of the repair and/or reconstruction of the dwelling . . . except for the specific exceptions set forth in Section 4307," or until ER 23 "is terminated by the Commissioner." Certain exceptions for cancellation or nonrenewal are provided for in ER 23 § 4307. However, these exceptions are inapplicable in the case sub judice.
The purpose and intent of ER 23 is expressly stated in § 4321:
A. The provisions of Emergency Rule 23 shall be liberally construed to effectuate the intent and purposes expressed herein and to afford maximum consumer protection for the insureds of Louisiana who desire to maintain or obtain personal residential, commercial residential or commercial property insurance for a dwelling, residential property or commercial property located in Louisiana.
B. The additional purpose and intent of Emergency Rule 23 is to provide sufficient time for the Louisiana Citizens Property Insurance Corporation to prepare and place on the open market insurance products that, in the opinion of the Commissioner, will provide adequate residential property, commercial residential property and commercial property insurance to Louisiana citizens subsequent to Hurricane Katrina and Hurricane Rita.
ER 23 terminated on the earlier date of either sixty days "after substantial completion" of "the repair or reconstruction" to a damaged property or December 31, 2006.
Subsequently, on May 31, 2006, the Louisiana Commissioner of Insurance issued Advisory Letter No. 06-03, which addressed "premium/rate increases contrary to Emergency Rule 23 and the Louisiana Insurance Code." The Commissioner stated that insurers "may be taking actions that do not comply with the purpose and intent of Emergency Rule 23, as well as LRS §§ 22:652, 22:1214(7), and 22:1262.1.D(2)." He further stated that many insurers were continuing, extending, or renewing insurance coverage, but that the policies must contain the "same terms and conditions as previously written, subject only to a change to the premium/rate structure that is based on objective criteria." Additionally, the "objective criteria" were "limited to pre-Katrina and pre-Rita defined underwriting guidelines, actual reinsurance costs, and other objective rating and underwriting criteria." Increases not based on the "objective criteria" created a "rebuttable presumption against the admitted insurer that the motivation for the increase was to circumvent the purpose and intent of Emergency Rule 23."

PRIVATE RIGHT OF ACTION/ADEQUATE ADMINISTRATIVE REMEDIES
RSUI contends that the trial court erroneously interpreted Crescent Adjustment Servs. v. Bacino, 475 So.2d 1121 (La.App. 4 Cir.1985), to grant HRI a private right of action[4] for injunctive relief for the alleged violation of ER 23. RSUI argues that ER 23 does not specifically confer a private right of action; thus, disputes must be resolved by the Department of Insurance through administrative means. Accordingly, RSUI asserts that the trial court erred in finding that no other adequate administrative remedies existed for HRI.
Judicial relief may be granted to a party who has yet to exhaust all administrative remedies if the plaintiff can "show *206 or prove that the present is one of the exceptional situations" where "any administrative remedy is irreparably inadequate." Steeg v. Lawyers Title Ins. Corp., 329 So.2d 719, 720 (La.1976). Further, this Court, in Crescent, held that there is "no prohibition against a trial court's allowing injunctive relief" even when the Insurance Commissioner is vested with the power to issue cease and desist orders. 475 So.2d at 1122-23. Further, "[e]very agency is granted all authority necessary to comply with the requirements of this Chapter through the issuance of rules or otherwise." La. R.S. 49:966(A).
RSUI cites Clausen v. Fid. and Deposit Co. of Maryland, 95-0504 (La.App. 1 Cir. 8/4/95), 660 So.2d 83, for the proposition that a private cause of action must be specifically provided. The court, in Clausen, held that La. R.S. 22:1214(14) did not provide a private cause of action because a detailed enforcement mechanism existed for dealing with alleged unfair trade practices. 95-0504, at p. 4, 660 So.2d at 86. However, Clausen is factually distinguishable from the case sub judice because HRI does not allege that RSUI committed a violation of unfair trade practices and the court had no jurisprudential guidance on the issue.
In the case sub judice, the purpose and intent of ER 23, as expressed in § 4321, states that ER 23 "shall be liberally construed to effectuate the intent and purposes expressed herein and to afford maximum consumer protection. . . ." ER 23 was adopted using the plenary authority of the Commissioner of Insurance and he did not expressly prohibit a private right of action. We find that this provision implicitly provides for a private right of action in order for ER 23's purpose and intent to be adequately effectuated.[5] Thus, we find that a private right of action exists and must discern whether the trial court exceeded the scope of ER 23.

EXCEEDED SCOPE OF ER 23
RSUI avers that the trial court exceeded the limits of ER 23 because the judgment ordered the extension of HRI's policy for one year and prohibited premium changes for properties in Louisiana, with or without damage from the Hurricanes, and properties located outside Louisiana. RSUI also alleges that it did not violate ER 23 because it offered to renew HRI's insurance policy under the same terms and conditions with changes in the premium based on objective criteria in accordance with Advisory Letter No. 06-03.
First, we find the contention that trial court could not order the extension of the policy for one year is without merit. RSUI offered to extend HRI's insurance policy for one year with the changed coverage and higher premium. Additionally, the one-year term of the insurance policy can be viewed as a term or condition of the policy, which RSUI was required to renew pursuant to ER 23 and Advisory Letter No. 06-03. Otherwise, an insurer could circumvent the intent of ER 23 by renewing policies for an arbitrary amount of time.
Second, ER 23 and Advisory Letter No. 06-03 indicate that the Insurance Commissioner intended for insurers to renew policies covering damages to Louisiana *207 properties in a fair manner. In the case sub judice, RSUI offered two renewal binders to HRI. However, the terms and conditions were not similar in that the renewal premium was almost quadrupled. Additionally, the coverage terms changed from "building, personal property, business income/rental value, and extra expense" to "building, contents, improvement & betterments, and business income." While RSUI may have intended that the coverage terms, as quoted above, were to remain the same, the words used are different, which connotes that RSUI consciously used different wording in the renewal quote as different terms of coverage. HRI never agreed to any adjustments in the insurance policy, such as the increased premium or the alleged changed coverage that RSUI quoted. HRI agreed only to a slight increase due to the purchase of additional out-of-state properties that it wanted included in the policy.
Third, RSUI contends the trial court erred by extending the insurance policy for properties not in Louisiana and properties not damaged by the Hurricanes. However, ER 23 states that it covers insurance policies, not individual properties. Thus, this contention is without merit.
The time period is a term and condition, which ER 23 required RSUI to renew. RSUI also offered to provide insurance for a one-year term prior to the preliminary injunction proceedings. Further, ER 23 repeatedly mentions insurance policies and not specific properties in regards to the renewal requirements, with the one exception for multi-state policies, which is inapplicable. Thus, we do not find that the trial court exceeded the intended scope of ER 23.

AFFIDAVIT OF DAVID NORRIS
The Insurance Commissioner, in Advisory Letter No. 06-03, enumerated that ER 23 permits insurers to increase an insurance premium if the increase is based upon "objective criteria" that is "limited to pre-Katrina and pre-Rita defined underwriting guidelines, actual reinsurance costs, and other objective rating and underwriting criteria."
RSUI contends the trial court erred in not allowing the affidavit of David Norris ("Mr. Norris"), RSUI's Property Product Line Manager, to document that the premium on HRI's policy was raised according to the required objective criteria based on his personal knowledge. Mr. Norris' affidavit was the only evidence submitted by RSUI to justify the premium increase. The trial court found that the affidavit contained conclusory statements and lacked detail regarding the objective criteria used to justify the $370,000 per year, quadrupled premium. Mr. Norris' affidavit states that HRI's premium increase was "based upon objective criteria." He also reiterated the language of Advisory Letter No. 06-03 and stated that, "[s]uch objective criteria is limited to pre-Katrina and pre-Rita defined underwriting guidelines, actual reinsurance costs, and other objective rating and underwriting criteria." He also stated that RSUI did not violate ER 23. Mr. Norris' affidavit did not explain how he calculated the higher premium or give specific details regarding the process of how RSUI calculates premiums.
RSUI likens the case sub judice to that of Longo v. Bell South Telecomms., Inc., 03-1887 (La.App. 4 Cir. 10/7/04), 885 So.2d 1270, wherein this Court permitted an affidavit to establish that BellSouth did not own or maintain a particular utility cable. However, we find that case factually distinguishable. In Longo, the affidavit included information about the affiant's investigation into the ownership of the utility *208 cable and not based solely on his personal knowledge.
The trial court, in its Reasons for Judgment, stated:
[t]his Court finds that RSUI has failed to offer adequate evidence in support of its assertion that it has used pre-Katrina underwriting guidelines to calculate the quoted $370,000 premium. The Affidavit of David Norris contains only conclusory statements and insufficient detail as to what objective criteria or underwriting guidelines RSUI used to calculate the $370,000 premium price.
Based on the fact that Mr. Norris' affidavit reiterates Advisory Letter No. 06-03 to assert that RSUI did not violate ER 23, the lack of specific details regarding the computation of the renewal premium, and the reasoning of the trial court, we do not find that the trial court abused its discretion by holding that RSUI did not provide sufficient evidence to support the premium increase.

VIOLATION OF ER 23/INJUNCTIVE RELIEF
"A preliminary injunction is an interlocutory procedural device" and the "trial court has great discretion to grant or deny the relief requested." LHO New Orleans LM, L.P. v. MHI Leasco New Orleans, Inc., 02-0663, p. 3 (La.App. 4 Cir. 11/20/02), 833 So.2d 1010, 1012. "An injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant." La. C.C.P. art. 3601. The petitioner "must establish a prima facie showing" that he is "entitled to the relief sought" and "will prevail on the merits of the case." Saunders, 05-0205, p. 5, 923 So.2d at 754. However, the standard of proof is less than that required for a permanent injunction. Hall v. Fertility Inst. of New Orleans, 94-1135, p. 4 (La.App. 4 Cir. 12/15/94), 647 So.2d 1348, 1351. Irreparable harm means that money damages cannot adequately compensate for the injuries suffered and that the injuries "cannot be measured by pecuniary standards." Saunders, 05-0205, p. 6, 923 So.2d at 754. The trial court also should consider "whether the threatened harm to the plaintiff outweighs the potential for harm or inconvenience to the defendant and whether the issuance of the preliminary injunction will disserve the public interest." Chandler v. State, Dep't of Transp. and Dev., 02-1410, p. 7 (La.App. 1 Cir. 3/28/03), 844 So.2d 905, 909.
The trial court stated in its Reasons for Judgment:
This Court finds that RSUI has violated Emergency Rule 23 by failing to renew HRI's existing insurance policy under the same terms and conditions subject to a premium/rate structure based on objective criteria according to pre-Katrina underwriting guidelines, as mandated by Emergency Rule 23 and Advisory Letter 06-03.
. . . .
This Court finds that HRI is entitled to injunctive relief because Louisiana law does not require a showing of irreparable harm for a violation of a prohibitory law or statute such as Emergency Rule 23. (Footnote omitted).
This Court finds that even if HRI were required to show irreparable injury, HRI has presented sufficient evidence that it will be irreparably harmed if RSUI does not renew its property insurance under the same terms and conditions. If HRI is unable to obtain property insurance, it faces irreparable injury in that it will be in default of mortgage agreements, partnership agreements, management agreements and ground lease agreements requiring the maintenance of property insurance, *209 threatening the loss of goodwill, loss of reputation, and loss of its competitive edge in the marketplace. This Court also finds that failure to maintain insurance will also jeopardize several of HRI's pending financial transactions on assets covered by the RSUI policy, negatively impacting HRI in excess of several million dollars in 2006.
. . . .
This Court finds that declaratory relief is not an adequate remedy at law as HRI is not requesting that this Court declare the rights, status and legal relations between RSUI and HRI, but that this Court enjoin RSUI from changing the terms and premium of the existing policy, and maintain the existing policy as written.
The trial court's reasoning, while not binding on this Court, is persuasive in guiding our review of the record.
RSUI asserts that HRI damages are quantifiable as $261,750, the difference in the disputed policy premiums. However, HRI contends that it will suffer irreparable harm if this Court does not uphold the preliminary injunction granted by the trial court. We agree. If HRI is unable to pay the quadrupled premium price, as the trial court stated, HRI would then:
be in default of mortgage agreements, partnership agreements, management agreements and ground lease agreements requiring the maintenance of property insurance, threatening the loss of goodwill, loss of reputation, and loss of its competitive edge in the market-place.
Given the multiplicity of possible losses, including insurance; mortgage, partnership, management, and ground lease agreements; goodwill; reputation; and competitive edge in the marketplace, we find the possible harm egregious. Therefore, we find the harm to HRI cannot be measured by pecuniary standards once the contracts are violated and HRI's reputation lost based on the facts and circumstances of this case. This harm to HRI outweighs the inconvenience to RSUI, as RSUI is the insurance company that is prepared to shoulder the burden and ER 23 requires insurers to renew existing insurance policies. Also, the public interest is served by issuing preliminary injunctions for violations of ER 23.
We find that RSUI violated ER 23 by increasing the premium without substantiating the increase with its method of using objective criteria with standards prior to the Hurricanes. Additionally, the coverage terms of the existing policy and the renewal quote do not contain identical language. Mr. Norris' conclusory affidavit was RSUI's only evidence that it did not violate ER 23.
We find that HRI would suffer irreparable harm if it could not renew the insurance policy with RSUI due to the increased premium and changed coverage terms, which violated ER 23. Accordingly, we do not find that the trial court manifestly erred in its factual conclusions or abused its great discretion when it granted HRI's request for a preliminary injunction.

TAKINGS CLAUSE
We pretermit a discussion of the takings clause of the United States Constitution as it is not properly before this Court and was not before the trial court.

DECREE
For the foregoing reasons, we find that the trial court did not err and affirm.
AFFIRMED.
TOBIAS, J., dissents and assigns reasons.
*210 TOBIAS, J., dissents and assigns reasons.
Although I agree with the majority that a private right of action exists for HRI in this matter for the reasons assigned in Dillard v. Lexington Ins. Co., 466 F.Supp.2d 723 (E.D.La.10/2/06),[1] I respectfully dissent from the majority's decision that the trial court did not commit legal error in issuing the writ of preliminary injunction in this matter.[2]
The preliminary injunction issued by the trial court was improperly issued as a matter of law. The preliminary injunction that was issued was mandatory in nature; under Louisiana law, it is not possible to issue a mandatory preliminary injunction, because mandatory injunctions and preliminary injunctions have different procedural rules and different evidentiary burdens as a matter of law.[3] A mandatory injunction, as opposed to a prohibitory injunction, compels a party to perform a specific action. Denta-Max v. Maxicare La., Inc., 95-2128 (La.App. 4 Cir. 3/14/96), 671 So.2d 995, citing, Bollinger Machine Shop & Shipyard, Inc. v. U.S. Marine, Inc., 595 So.2d 756, 758 (La.App. 4th Cir.), writ denied, 600 So.2d 643 (La.1992); Maestri v. Destrehan Veterinary Hosp., 554 So.2d 805, 808 (La.App. 5th Cir.1989); Werner Enterprises, Inc. v. Westend Development Co., 477 So.2d 829, 832 (La.App. 5th Cir. 1985).
In the case at bar, the judgment rendered by the trial court contains both prohibitory orders ("RSUI is enjoined . . . from changing the terms, conditions, or premium for renewal of Policy No. NHD341277 . . .") and a mandatory orders ("and is ordered to renew the same under the same terms and conditions and for the same premium as provided for in the existing policy").[4] However, insofar as RSUI is *211 ordered to maintain an insurance policy for one year, it is clear that the trial court has ordered it to affirmatively do (i.e., perform an act) something, making it a mandatory injunction.
We noted in Denta-Max, supra, that a mandatory injunction has substantially the same effect as a permanent injunction. Denta-Max, p. 3, 671 So.2d at 997. De facto, they are one and the same. A mandatory injunction may not issue absent a full evidentiary hearing, while a prohibitory preliminary injunction only requires a prima facie showing that the applicant for the writ will prevail on the merits. As the Louisiana Supreme Court has stated in City of New Orleans v. Board of Directors of the Louisiana State Museum, 98-1170, p. 11 (La.3/2/99), 739 So.2d 748, 756, citing, Denta-Max v. Maxicare La., Inc., 95-2128 (La.App. 4 Cir. 3/14/96), 671 So.2d 995:
A mandatory injunction may not be issued on a merely prima facie showing that the party seeking the injunction can prove the necessary elements; instead the party must show by a preponderance of the evidence at an evidentiary hearing that he is entitled to the preliminary injunction.
We held in Denta-Max that a mandatory injunction may not issue absent "a full trial on the merits in which the taking of evidence is not limited that [the petitioner] is entitled to the injunction." Id., 95-2128 at p. 5, 671 So.2d at 998.
In Dore v. Jefferson Guaranty Bank, 543 So.2d 560 (La.App. 4th Cir.1989), this court held that the requirements for a mandatory injunction were met because the trial court "conducted an evidentiary hearing at which all parties were present, represented by counsel and were afforded the opportunity to present evidence and cross-examine witnesses." 543 So.2d at 562.
In the case at bar, the transcript on the hearing for the preliminary injunction suggests that at some point prior to the hearing, the trial judge expressed a desire to accept only affidavits, documentary evidence, and argument by counsel on behalf of each party, even though representatives from HRI were present in court:[5]
MR. GARNER [counsel for plaintiffs]: . . . I don't have that in the record today. I know Your Honor said you did not want to take testimony. I can put Mr. Palmer on the witness stand or I can do a supplemental affidavit to clear this issue up. However you want to handle it.
COURT: Supplemental affidavit.
The trial court did not explicitly refuse to entertain live testimony at the hearing. However, issuance of a mandatory injunction without either live testimony or a stipulation by the parties that they waived a full hearing with live testimony is not permitted. That is, the trial court was not trying the issuance of a preliminary injunction at the hearing; the trial court was ruling upon a permanent injunction.
Even assuming that a preliminary injunction was being heard, and not a permanent injunction, the judgment cannot survive as a matter of law. Temporary restraining orders and preliminary injunctions are interlocutory orders designed to maintain the status quo between the parties until the ultimate issues in the case can be litigated. La. C.C.P. art. 3601; Yokum v. Court of Two Sisters, Inc., 06-0732 p. 3 (La.App. 4 Cir. 11/21/06), 946 So.2d 671, 673; Levine v. First National Bank of Commerce, 98-1069 (La.App. 5 *212 Cir. 6/1/99), 738 So.2d 133; Haughton Elevator Division v. State, Division of Administration, 367 So.2d 1161 (La.1979); Ridge Park v. Police Jury of Jefferson Parish, 210 La. 351, 27 So.2d 128 (1946); see also, Giron v. Housing Authority of City of Opelousas, 393 So.2d 1267, 1272 (La.1981) (A preliminary injunction is only provisional and is not intended as a resolution of the merits of a controverted issue.) "The principal demand is determined on its merits only after a full trial under ordinary process, even though the hearing on the summary proceedings to obtain the preliminary injunction may touch upon or tentatively decide merit issues." Smith v. West Virginia Oil & Gas Co., 373 So.2d 488, 494 (La.1979). In the case at bar, no indication appears in the record on appeal that there is any contemplation of further proceedings on the permanent injunction; indeed, it is unclear what further injunctive action the trial court could take in this matter, as the central issues raised by the petition for injunction have been adjudicated in their entirety.
The plaintiffs were free to proceed in this matter for injunctive relief, even though the relief sought sounds as a matter declaratory judgment relief. La. C.C.P. art. 1871, et seq. The function of a declaratory judgment is to establish the legal rights, duties, or status of the parties involved in the litigation. Dazet v. French Market Homestead, 533 So.2d 115, 116 (La.App. 4th Cir.1988). The declaratory judgment articles afford relief from uncertainty and insecurity with respect to legal obligations. Id. at 116. But declaratory actions are tried like other ordinary proceedings. La. C.C.P. art. 1879. Moreover, the trial of permanent injunctions like declaratory actions are not tried as summary proceedings. La. C.C.P. art. 2592. It therefore follows that mandatory injunctions that are permanent in nature likewise are tried as ordinary proceedings. As our jurisprudence noted above makes clear, a mandatory "preliminary" injunction is de facto and de jure a permanent injunction that must be tried as an ordinary proceeding. If the trial court had elected to issue a declaratory judgment, it would have been litigated by ordinary process, and the trial court could have more explicitly entertained the factual issues before it.[6]
The failure to implement the proper trial procedures in hearing the motion for mandatory injunction has implications on the substantive factual issues underlying the petition for injunction. In particular, the majority agrees with the trial court that a showing of irreparable harm was not necessary in light of an alleged violation of ER 23, which has the legal effect of a statute. Indeed, where injunctive relief is sought to prevent the violation of a statute, the jurisprudential rule is that no showing of irreparable harm is necessary. However, the violation of law must be *213 clear and not speculation. While the trial court rejected RSUI's testimony by affidavit as offering a merely conclusory statement and not sufficient evidence to support the change in premium, the facts underlying this dispute were required to have been more fully vetted in a complete trial on the merits of the request for a mandatory injunction.[7] ER 23 did not prevent RSUI from raising its premium; it merely required RSUI to offer objective reasons for its increase. In light of the fact that HRI added new properties to the policy that was in effect from 31 May 2005 through 31 May 2006, it is follows that RSUI more likely than not was entitled to increase the premium as it assumed greater risks of loss.
I would also address RSUI's seventh assignment of error relating to the constitutionality of ER23. As a preliminary matter, the constitutionality of a statute must first be alleged in the trial court, and the alleged unconstitutionality must be specifically pled to be considered by the trial court. Vallo v. Gayle Oil Co., 94-1238 (La.11/30/94), 646 So.2d 859. While RSUI alleged that ER 23 violated the Takings Clause of the Fifth Amendment of the U.S. Constitution as an affirmative defense in its answer, it did not discuss the issue in any further pleadings. Although the Louisiana Attorney General must be served a copy of the pleading that contests the constitutionality of a statute, it is clear that the attorney general need not be served when one is contesting the constitutionality of a regulation. Id. at 864; La. R.S. 13:4448.[8] Nothing in the record before us indicates that the attorney general was served with the plaintiffs' lawsuit or the defendant's answer asserting the unconstitutionality of the Insurance Commissioner's regulation. Although one might argue that the issue of the Takings Clause is not properly before this court according to La. R.S. 13:4448, I find that the attorney general did not have to be notified of the suit under the clear, unambiguous language of La. R.S. 13:4448.
I find that RE 23[9] does not violate the Takings Clause of the Fifth Amendment. The Taking Clause of the Fifth Amendment states, in pertinent part, "nor shall *214 private property be taken for public use, without just compensation." U.S. Const. amend. V; see also Penn Cent. Transp. Co. v. New York City, 438 U.S. 104, 121-23, 98 S.Ct. 2646, 2658, 57 L.Ed.2d 631 (1978) (applying the Fifth Amendment to the States through the Fourteenth Amendment). "The Fifth Amendment's guarantee that private property shall not be taken for a public use without just compensation was designed to bar [the] Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Armstrong v. United States, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960).
The current standard for evaluating a regulatory taking is found in Connolly v. Pension Benefit Guaranty Corp., 475 U.S. 211, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986). In Connolly, the Supreme Court recognized three factors that should be considered to identify a regulatory taking: (1) the economic impact of the challenged rule, regulation, or statute on the plaintiff; (2) the extent to which the regulation interferes with investment-backed expectations; and (3) the nature of the challenged action. Id. at 224-26, 106 S.Ct. at 1026 (citations omitted). See also Vesta Fire Insurance Corp. v. State of Florida, 141 F.3d 1427, 1431 (11th Cir.1998). I do not find that these factors are present under the facts of this case.
In conclusion, I am reminded of Benjamin Franklin's comment appearing in the Historical Review of Pennsylvania in 1759, to-wit, "They that can give up essential liberty to obtain a little temporary safety deserve neither liberty nor safety." Applied to the case at bar, one can say that the failure of a court to afford an insurer a full evidentiary hearing as required by existing law and jurisprudence in order to temporarily give a person the right to retain his/her/its insurance policy on the same terms and conditions without any increase in premium may result in no one being able to obtain any insurance. The rush to judgment was unwarranted and sounds clearly in a denial of procedural, if not also substantive, due process.
For the foregoing reasons, I respectfully dissent and would vacate the injunction and remand the matter to the trial court for a full trial on the merits of the injunction where all facts might be properly ascertained.
NOTES
[1] HRI is the insured and representative of 302 Jefferson Street, L.L.C.; 800 Canal Street Limited Partnership; 800 Iberville Street Limited Partnership; Eleventh Floor Lodging, L.L.C.; ELF Hotel Operating Company, L.L.C.; Hammond Eastside Limited Partnership; Historic Restoration, Incorporated; LGD Rental I, LLC; New Iberia High School Limited Partnership; Redemptorist Limited Partnership; South Peters Hotel Investors Limited Partnership; Terrebonne Elderly Housing Limited Partnership; The Bakery Condominium Association, Inc.; Shreveport Renewal Limited Partnership; Nissen Building, L.L.C.; Cupples Residential I, L.L.C.; and Union Limited Partnership.
[2] The record refers to HRI's check in the amounts of $108,000 and $108,250.
[3] We recognize that Judge Tobias' dissent asserts that this matter was a mandatory injunction. However, the record before us indicates that the parties' intent and the trial court's judgment were based upon a preliminary injunction.
[4] A private right of action is the right of a private party to seek judicial relief for violations of legal provisions, such as provisions of the Louisiana's Insurance Code, which may be provided for expressly or implicitly.
[5] The United States District Court for the Eastern District of Louisiana has specifically addressed this issue in its "Order and Reasons" in Dillard Univ. v. Lexington Ins. Co., 466 F.Supp.2d 723 (E.D.La.10/2/2006). The district court judge granted a preliminary injunction for an alleged violation of ER 23 and found that the intent of ER 23 provided for a private right of action for those insureds whose insurers allegedly violated ER 23. Id. at 727.
[1] The first paragraph of Emergency Rule 23 states:

Emergency Rule 23 is issued pursuant to the plenary authority of the Commissioner of Insurance for the state of Louisiana, including, but not limited to, the following:
*Proclamation No. 48 KBB2005 issued on August 26, 2005 by Governor Kathleen Babineaux Blanco declaring a State of Emergency relative to Hurricane Katrina.
*Proclamation No. 53 KBB 2005 issued on September 20, 2005 by Governor Kathleen Babineaux Blanco declaring a State of Emergency relative to Hurricane Rita
*Executive Order No. KBB2005-70 issued on October 24, 2005 by Governor Kathleen Babineaux Blanco transferring authority over any and all insurance matters to Commissioner of Insurance J. Robert Wooley.
 *LSA R.S. 29:724
 *LSA R.S. 29:766
 *LSA R.S. 22:2
 *LSA R.S. 22:3
 *LSA R.S. 22:636
 *LSA R.S. 22:636.2
 *LSA R.S. 22:636.4
 *LSA R.S. 22:636.6
 *LSA R.S.22:1214(12) and (14)
 *LSA 22:1471
 *LSA R.S.49:950 [Emphasis supplied.]

[2] For reasons discussed infra, the trial court also erred in issuing the temporary restraining order.
[3] To the extent that RSUI failed to address the distinction between an ordinary injunction and a mandatory injunction, it is apparent that La. C.C.P. art. 2129 supersedes Rule 2-12.4 of the Louisiana Uniform Rules of Courts of Appeal and Rule VII, § 4(3) of Part A of the Rules of Supreme Court of Louisiana. Rodrigue v. Rodrigue, 591 So.2d 1171 (La. 1992) (rules of court that conflict with the Code of Civil Procedure are null and void).
[4] I note that the plaintiffs do state a valid issue that what the renewal policy covered may have changed from the original policy. Included among these is the change of language from "buildings, personal property, business income/rental value, and extra expense" to "building contents, improvement & betterments, and business income." No definitions of these terms appear in the record before us.
[5] It is unclear whether a representative from RSUI was also present. At any rate, neither side was afforded the opportunity to cross-examine any witness providing testimony through an affidavit.
[6] It therefore follows that the trial court erred issuing the mandatory temporary restraining order in the case at bar. The reasoning for this is best illustrated by the following example:

Plaintiff files suit for a temporary restraining order, preliminary injunction, and, in due course, a permanent injunction. The plaintiff seeks from the court an order directing the defendant to pay a sum certain of money. If the court issues the order to pay the money solely upon the sworn petition of the plaintiff, the defendant is in contempt of court if the defendant does not pay the money as ordered even though the defendant has not been afforded an opportunity to be heard. Similarly, at the hearing of the preliminary injunction, the defendant is not afforded the right, unless the court elects to have a full evidentiary hearing, to prove the why it should not pay the plaintiff the sum of money sought. That a bond might be posted by the plaintiff in an amount to be determined by the court (La. C.C.P. art. 3610) does not protect the defendant for he is being deprived of property without a hearing.
[7] This is especially true in light of the mandate on trial courts to try a motion for preliminary injunction within ten days of its service on the adverse party. See, La. C.C.P. art. 3602. Indeed, the mandatory preliminary injunction, which as noted in the body of this dissent is a permanent injunction, must be heard within ten days of service of the petition.
[8] La. R.S. 13:4448 states:

"Prior to adjudicating the constitutionality of a statute of the state of Louisiana, the courts of appeal and the Supreme Court of Louisiana shall notify the attorney general of the proceeding and afford him an opportunity to be heard. The notice shall be made by certified mail. No judgment shall be rendered without compliance with the provisions of this Section; provided where the attorney general was not notified of the proceeding, the court shall hold adjudication of the case open pending notification of the attorney general as required herein." [Emphasis supplied.]
[9] Six exceptions to ER 23 are listed in ER 23 § 4307 for cancellation or non-renewal of a policy:

1. Non-payment of the premium after providing the insured with notice of cancellation in accordance with the applicable statutory time period mandated by the Louisiana Insurance Code for that type of insurance.
2. Fraud or material misrepresentation related to the Hurricane Katrina or Hurricane Rita claim, but only after the insurer has provided the insured with a 60-day written notice of cancellation setting forth the specifics with regard to the alleged fraud or material misrepresentation.
3. The insured causes an unreasonable delay in the repair or reconstruction of the dwelling, residential property, or commercial property, but only after the insurer has provided the insured with a 60-day written notice of cancellation setting forth the specifics with regard to the insureds unreasonable delay with regard to the repair or reconstruction.
4. The insured has been paid the full policy limits and the insured has evidenced the intent to not repair or reconstruct the dwelling, residential property or commercial property.
5. The insured has not been paid the full policy limits but the insured has evidenced the clear intent to not repair or reconstruct the dwelling, residential property or commercial property.
6. The insured violates a material provision of the policy, including, but not limited to, performing illegal activity or failing, without just cause, to make reasonable efforts to protect the insured dwelling, residential property or commercial property that results in an increased risk to the material detriment of the insurer.