13 So.3d 662 (2009)
The COUNCIL OF the CITY OF NEW ORLEANS, Jackie Clarkson, Arnie Fielkow, Cynthia Hedge-Morrell, Cynthia Willard-Lewis, Stacy Head, Shelly Midura and James Carter
v.
Tracie WASHINGTON, Tionne Simon and the Louisiana Justice Institute.
No. 2009-C-0389.
Court of Appeal of Louisiana, Fourth Circuit.
May 12, 2009.
*663 William P. Quigley, Davida Finger, Loyola UniversitySchool of Law, Ronald L. Wilson, Clarence Roby, Jr., New Orleans, LA, for Tracie L. Washington and the Louisiana Justice Institute.
Edward R. Washington III, Deputy City Attorney, Evelyn F. Pugh, Chief Deputy City Attorney, Franz L. Zibilich, Associate City Attorney, Penya Moses-Fields, City Attorney, New Orleans, LA, for the City of New Orleans.
Steven J. Lane, Leonard A. Davis, Soren E. Gisleson, Herman Herman Katz & Cotlar, L.L.P., New Orleans, LA, for the New Orleans City Council.
(Court composed of Judge JAMES F. McKAY, III, Judge TERRI F. LOVE, Judge EDWIN A. LOMBARD, Judge ROLAND L. BELSOME, Judge PAUL A. BONIN).
ROLAND L. BELSOME, Judge.
Relators' writ is granted. The trial court's judgment is vacated and the injunction is hereby dissolved. The Relators' Motion for Leave to File Reply to Plaintiffs' Response to Defendants' Application for Supervisory Writ is dismissed as moot.
In Relators' sole assignment of error, it is argued that the trial court erred in granting the preliminary injunction.[1] This injunction and related arguments surround a December 3, 2008 public records request and the unorthodox production procedures followed. Ordinarily, a public records request to the City of New Orleans is properly responded to via its Legal Department, the City Attorney's office. In this factual scenario, help was solicited by Relator Washington from Veronica White, the Director of Sanitation for the City of New Orleans. Relator Washington's December 3, 2008 written public records request sought electronic mail records from a number of New Orleans City Council members dating from 2006 to the present. These New Orleans City Council emails were stored in the City of New Orleans' server, an electronic filing cabinet. Apparently, fearing the imminent disposal of the emails, Relator Washington enlisted the assistance of Ms. White, who facilitated pick-up and production at some point in December 2008.[2] Independent counsel for the New Orleans City Council points out that these documents were not sanitized for privileged materials prior to production. The City Council further argues, correctly, that attorney ethical mandates pursuant to the Louisiana Rules of *664 Professional Conduct[3] required Relator Washington to bundle up the potentially privileged materials and return them, and not threaten to put them curbside for public consumption, as acknowledged by all parties. The trial court adopted the City Council's position and found that Relator Washington must produce papers on all persons to whom she has displayed her wares over the preceding ninety-plus days. Essentially, the trial court recalled all privileged and non-privileged documents and ordered their production.
The records released were in unredacted form, and Relator Washington, by her own admission, enjoyed unrestricted access to those records for approximately ninety days. Relator Washington maintains that she discussed these records with numerous individuals and also discussed the records publicly. While the records received by Relators may contain privileged information that by definition is not public record,[4] the fact remains that the records, privileged or not, have already been provided to Relators.
We note at the outset that we do not address the legality of the procurement of the records at issue, but merely acknowledge that such records have been produced and viewed in the public arena for approximately three months prior to the issuance of this injunction. The potential civil malfeasance and/or criminal behavior of any and/or all actors associated with the procurement of these documents is not before us. The sole issue is whether or not the trial court's judgment violates Relators' First Amendment rights.
Essentially, at issue in this writ is whether the trial court, in deferring, delaying, and/or denying publication of previously produced public records violated Relators' First Amendment rights afforded by the U.S. Constitution. Notably, no court in this state has been called upon to balance the Louisiana Public Records Law and the Louisiana Rules of Professional Conduct against First Amendment and constitutional interests.
Relators argue that First Amendment rights are violated by the trial court's judgment, which constitutes an impermissible prior restraint on freedom of speech, relying in part on New York Times Co. v. United States[5] In New York Times *665 Co. v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971), the U.S. Supreme Court held that government records involving matters of national security could be published, despite the fact that the records were obtained illegally, because such a prohibition would infringe on the publication's First Amendment Rights.[6] The New York Times Court noted that "the history and language of the First Amendment[7] support the view that the press must be left free to publish news, whatever the source, without censorship, injunctions, or prior restraints." New York Times, 403 U.S. at 717, 91 S.Ct. at 2143. We find that, although Relator Washington is not a member of the press, the same reasoning applies, as she seeks to publish records obtained via her public records request. In New York Times, the government argued that dissemination of the government documents would greatly compromise national security.[8] We find *666 that the consequences of the release of information in the instant case would not be so insidious.
Furthermore, if inadvertently disclosed privileged documents, which are by definition not public records, are subsequently disseminated by Relator Washington, ethical and procedural violations will likely be asserted.[9] With regard to the interests of the Louisiana Public Records Law, Code of Civil Procedure, and Rules of Professional Conduct, as compared to First Amendment interests, however, we find that First Amendment concerns greatly outweigh the former. Additionally, as previously noted, whether every document in the records disseminated to Relator Washington constitutes a public record or not, the information has already been released in its entirety. The trial court's attempt to withhold information received by Washington, legally or illegally, violates the very foundation of the First Amendment.
The U.S. Supreme Court has stated that "[a]ny prior restraint on expression comes to this Court with a `heavy presumption' against its constitutional validity." Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 558, 96 S.Ct. 2791, 2802, 49 L.Ed.2d 683 (1976)(quoting Carroll v. Princess Anne, 393 U.S. 175, 181, 89 S.Ct. 347, 351, 21 L.Ed.2d 325 (1968); Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963)). With regard to the U.S. Supreme Court cases examining prior restraint, the Court determined that "[t]he thread running through all these cases is that prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." Nebraska Press Ass'n, 427 U.S. at 559, 96 S.Ct. at 2802.
The City Council argues, however, that no First Amendment rights have been violated because the preliminary injunction is temporary; thus, Relators are not indefinitely prohibited from publishing the information, but are only postponed from doing so while the trial court, not the City Council, reviews the emails prior to dissemination for privileged or protected information. Moreover, the City Council submits that Relators will have the opportunity in the future to object to any information the trial court deems privileged. The U.S. Supreme Court observed in Nebraska, supra:
[T]he order at issue like the order requested in New York Times does not prohibit but only postpones publication. Some news can be delayed and most commentary can even more readily be delayed without serious injury, and there often is a self-imposed delay when responsible editors call for verification of information. But such delays are normally slight and they are self-imposed. Delays imposed by governmental authority are a different matter.
Nebraska Press Ass'n, 427 U.S. at 559, 96 S.Ct. at 2802.[10] We find this reasoning analogous to the issue in the instant writ.
*667 As previously noted, we recognize and do not dispute that the Louisiana Public Records Law contains numerous exceptions, and that the records previously released to Relators may indeed contain records that are exempted. Additionally, we are not questioning the constitutionality of the Louisiana Public Records Act. The question is not the constitutionality of the statute, but whether or not, in this instance, the court below addressed the constitutional rights afforded to Relators. The Louisiana Public Records Act speaks to what constitutes a public record and the manner in which public records are available. In this case, however, the records public records by definition or nothave already been released pursuant to a La. R.S. 44:1 written public records request. Similarly, La.Code Civ. Proc. art. 1424(D)[11] contemplates the return of privileged information if such disclosure is made in connection with litigation; such was not the case here, as the records received by Relators were released in response to her public records request; the litigation ensued as a result of the records that had previously been released pursuant to the public records request.
While we recognize that First Amendment rights are not unqualified,[12] we cannot say that the City Council has overcome the heavy presumption against constitutional validity. Accordingly, we find that the trial court abused its discretion in granting the preliminary injunction under these particular facts and circumstances. While the constitutional issues were not specifically addressed below, we find that the practical nature of the First Amendment concerns necessitates review. See La.Code Civ. Proc. art. 2164 ("The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal.") Finally, to paraphrase Justice Brennan, our opinion in this matter should not be taken to indicate the propriety, in the future, of issuing temporary stays and restraining orders to block the publication of material sought to be suppressed. See New York Times, 403 U.S. at 724-725, 91 S.Ct. at 2146-47 (Brennan, J., concurring).
WRIT GRANTED; JUDGMENT VACATED.
LOVE, J., Concurs and Assigns Reasons.
McKAY, J., Dissents with Reasons.
*668 McKAY, J., Dissents with Reasons.
I respectfully dissent from the majority's decision to grant this writ. I would deny the writ and affirm the trial court's granting of the preliminary injunction.
The primary purpose of injunctive relief is to prevent the occurrence of future acts that may result in irreparable injury, loss or damage to the applicant. La. C.C.P. art. 3601. During the pendency of an action for an injunction, the court may issue a temporary restraining order, a preliminary injunction or both. Arco Oil & Gas Co. v. DeShazer, 98-1487 (La.1/20/99), 728 So.2d 841. A preliminary injunction may be granted pending trial on the merits of a permanent injunction in order to preserve the preexisting status of the parties. Metro Riverboat Associates, Inc. v. Bally's Louisiana, Inc., 97-1672 (La.App. 4 Cir. 1/14/98), 706 So.2d 553. The purpose of a preliminary is to preserve status quo until trial on the merits; on the other hand, a permanent injunction can be issued only after full trial on merits in which burden of proof is by preponderance of evidence. Louisiana Gaming Corp. v. Jerry's Package Store, Inc., 629 So.2d 479 (La.App. 3 Cir.1993). See also Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall, XXXX-XXXX (La.3/18/04), 867 So.2d 651, 655. The trial judge in a preliminary injunction has great discretion to grant or deny that relief. An appellate court will disturb the trial court judgment only upon a showing that the trial court abused its discretion. See Desire Narcotics Rehabilitation Center, Inc. v. State, Department of Health and Hospitals, XXXX-XXXX (La.App. 4 Cir. 10/17/07), 970 So.2d 17, 20. In the instant case, there is no indication that the trial court abused its discretion. The injunction issued by Judge Medley restores the City's rights, ensures that records exempt from disclosure under the Louisiana Public Records Act (LAPRA) are appropriately protected, and provides an orderly process for dissemination to the relators the records to which they are entitled. The injunction recognizes the public's right of access as well as the necessary procedures to ensure that access. The injunction preserves the preexisting status of all parties by ensuring that non-public records or records otherwise exempt from disclosure by law be identified and appropriately withheld. Any error asserted by relators is harmless because full compliance with the preliminary injunction will simply return the parties to their preexisting status. This is not a permanent resolution of the issue between the parties but is merely a procedural device which gives the trial court time to perform its proper function and examine the materials and make a determination as to what are public records that should be released and what are not. This function is within the trial court's discretion and we should not interfere with the trial court's judgment absent an abuse of that discretion.
Although the relators argue that the preliminary injunction violates their rights under the United States Constitution, specifically the First Amendment rights to free speech, publication, and association and the Fifth Amendment right to due process, the relators did not raise these constitutional issues below. The hearing transcript is devoid of any arguments on constitutional issues. As such, this Court is precluded from considering these issues on supervisory review. See Williams v. State, Dept. of Health and Hospitals, 95-0713 (La.1/26/96), 671 So.2d 899.
LOVE, J., Concurs and Assigns Reasons.
I concur in the majority result. I write separately to address Respondents' failure to establish an irreparable harm sufficient *669 to support the entry of a preliminary injunction and the grant of injunctive relief to address past acts.
To prevail on a motion for preliminary injunction, the movant is required to establish by prima facie evidence that: (1) the injury, loss, or damage it will suffer if the injunction is not issued may be irreparable; (2) it is entitled to the relief sought; and (3) it will likely prevail on the merits of the case. Hall v. Fertility Institute of New Orleans, 94-1135, p. 4 (La.App. 4 Cir. 12/15/94), 647 So.2d 1348, 1351. The jurisprudence interpreting La.Code Civ. Proc. art. 3601 establishes that, while the trial court has broad discretion in deciding whether to grant injunctive relief, injunction is an extraordinary remedy and should only issue where the party seeking it is threatened with irreparable loss without adequate remedy at law. Jim Walter Homes, Inc. v. Jessen, 98-1685 (La.App. 3 Cir. 3/31/99), 732 So.2d 699; Oestreicher v. Hackett, 94-2573 (La.App. 4 Cir. 5/16/95), 660 So.2d 29.
In A to Z Paper Company, Inc v. Carlo Ditta, Inc., 98-1417 (La.App. 4th Cir.9/9/98), 720 So.2d 703, this Court affirmed the denial of a preliminary injunction sought by businesses to enjoin the proposed construction of a cement facility. We found that "since the facility was not operational at the time the affidavits were secured, there could have been no direct evidence of damage caused by the emissions since the nature and amount of emissions, if any, could not then be determined." Id. We stated "plaintiffs seek to forestall construction pursuant to a building permit where there is and, as the trial court doubtless recognized, can be no showing of non-speculative damage." Id. This Court affirmed the trial court's finding that affidavits submitted in support of preliminary injunctive relief were insufficient to prove irreparable harm and remanded for trial on the merits. Id.
In like manner, I find Respondents' allegations of irreparable harm speculative. Respondents alleged irreparable harm and submitted affidavits in support of their motion for injunction, arguing that the emails contain attorney work product and privileged attorney-client communications concerning pending litigation involving the City of New Orleans and the City Council of New Orleans. Respondents state in their opposition that at the time of filing, they had no record or knowledge of what was produced to Relator. However, Respondents were the original creator and recipient of e-mails they argue are "privileged, exempt, or non-public," yet Respondents failed to present specific facts or examples to support this allegation. Arguments are not evidence. Law Offices of Robert M. Becnel v. Ancale, 00-295 (La. App. 5 Cir. 9/26/00), 769 So.2d 761, 766. I therefore find that Respondents failed to prove that they would suffer irreparable injury should an injunction not issue in the matter sub judice.
The act sought to be restrained by the preliminary injunction in the instant matter is the further dissemination of e-mails, and Respondents sought retrieval of e-mails that were in the public domain for greater than three months. The primary purpose of injunctive relief is to prevent the occurrence of future acts that may result in irreparable injury, loss or damage to the applicant. La.Code Civ. Proc. art. 3601. "Undoing past acts is not the proper subject of a preliminary injunction." Limousine Livery, Ltd. v. A Airport Limousine Serv., L.L.C., 07-1379, p. 9 (La.App. 4 Cir. 3/12/08), 980 So.2d 780, 786. "An injunction cannot be used to correct a `consummated wrong' or enjoin a `fait accompli.'" Id. (quoting Bristol Steel and Iron Works, Inc. v. State, Dep't of *670 Transp. and Dev., 507 So.2d 1233, 1235 (La.1987); Verdun v. Scallon Bros. Contractors, Inc., 263 La. 1073, 1078, 270 So.2d 512, 513 (1972)). I find the grant of injunctive relief under the instant facts was not only to prevent future acts but past acts as well.
NOTES
[1] "A preliminary injunction is an interlocutory procedural device designed to preserve the status quo as it exists between the parties, pending trial on the merits." Desire Narcotics Rehabilitation Center, Inc. v. State, Dept. of Health and Hospitals, XXXX-XXXX, p. 4 (La. App. 4 Cir. 10/17/07). 970 So.2d 17, 20. A trial court is afforded great discretion to grant or deny the relief requested with respect to a preliminary injunction. See, e.g., Historic Restoration, Inc. v. RSUI Indemnity Co., XXXX-XXXX, p. 11 (La.App. 4 Cir. 3/21/07) 955 So.2d 200, 208 (citing LHO New Orleans LM, L.P. v. MHI Leasco New Orleans, Inc., 02-0663, p. 3 (La.App. 4 Cir. 11/20/02), 833 So.2d 1010, 1012). An appellate court shall not disturb a trial court's findings with regard to a grant or denial of a preliminary injunction absent an abuse of discretion. Desire Narcotics, supra, 970 So.2d at 20.
[2] The December 3, 2008 request to Veronica White indicates a hand delivery to counsel for the City of New Orleans, Penya M. Moses-Fields. (Exhibit 1 to New Orleans City Council's brief). On February 2, 2009, Relator Washington requested Ms. Moses-Fields' assistance in supplementing the original response to her December 3, 2008 public records request. (Exhibit 2 to New Orleans City Council's brief). While the set of circumstances surrounding these requests is peculiar, all parties seem to agree that a public records request was made on December 3, 2008.
[3] lawyer who receives a writing that, on its face, appears to be subject to the attorneyclient privilege or otherwise confidential, under circumstances where it is clear that the writing was not intended for the receiving lawyer, shall refrain from examining the writing, promptly notify the sending lawyer, and return the writing.
La. Rules Prof. Conduct, 4.4(b).
[4] This Court recognizes that the Louisiana Public Records Law contains the provision "except as otherwise provided in this Chapter or the Constitution of Louisiana." La. R.S. 44:1(2)(a). In Section 4.1 of that Chapter, entitled "Exceptions," subsection (C) provides as follows:

The provisions of this Chapter [La. R.S. 44] shall not apply to any writings, records, or other accounts that reflect the mental impressions, conclusions, opinions, or theories of an attorney or expert, obtained or prepared in anticipation of litigation or in preparation for trial.
La. R.S. 44:4.1(C)(emphasis added). Thus, attorney-client communications are an exception to the Public Records law and are not a public record. Numerous affidavits were submitted to the trial court regarding attorney-client communications between City Council members and attorneys. The Council's Petition for Injunction listed approximately forty-nine lawsuits in which the City Council is currently engaged; the Council submits that it is engaged in approximately 500 to 1,500 such lawsuits in total.
[5] The trial court's judgment ordered Relators to: 1) refrain from transferring any of the documents received in response to the records request to any other person or legal entity; 2) refrain from making public, or place, transfer, or post any of the records on the Internet or any other public place, and to refrain from making the records available or disseminating same to any other person; 3) refrain from deleting, destroying, or modifying the records produced; 4) produce the original disks and any and all copies of the emails within 24 hours of the hearing date; 5) to produce a list of all persons and/or legal entities to whom Relators provided copies of and/or allowed to review the emails. Relators were further ordered to not maintain any copies whatsoever, electronically or otherwise, of the records.
[6] New York Times Co. v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971), the Government sought to enjoin the publication of excerpts from a massive, classified study of this Nation's involvement in the Vietnam conflict, going back to the end of the Second World War. The dispositive opinion of the Court simply concluded that the Government had not met its heavy burden of showing justification for the prior restraint. Each of the six concurring Justices and the three dissenting Justices expressed his views separately, but "every member of the Court, tacitly or explicitly, accepted the Near and Keefe condemnation of prior restraint as presumptively unconstitutional." Pittsburgh Press Co. v. Human Rel. Comm'n, 413 U.S. 376, 396, 93 S.Ct. 2553, 2564, 37 L.Ed.2d 669 (1973) (Burger, C. J., dissenting). The Court's conclusion in New York Times suggests that the burden on the Government is not reduced by the temporary nature of a restraint; in that case the Government asked for a temporary restraint solely to permit it to study and assess the impact on national security of the lengthy documents at issue.
Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 558-59, 96 S.Ct. 2791, 2802-03, 49 L.Ed.2d 683 (1976).
[7] The First Amendment to the U.S. Constitution provides:

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.
U.S. Const. Amend. I.
[8] entire thrust of the Government's claim throughout these cases has been that publication of the material sought to be enjoined `could,' or `might,' or `may' prejudice the national interest in various ways. But the First Amendment tolerates absolutely no prior judicial restraints of the press predicated upon surmise or conjecture that untoward consequences may result. Our cases, it is true, have indicated that there is a single, extremely narrow class of cases in which the First Amendment's ban on prior judicial restraint may be overridden. Our cases have thus far indicated that such cases may arise only when the Nation `is at war,' Schenck v. United States, 249 U.S. 47, 52, 39 S.Ct. 247, 249, 63 L.Ed. 470 (1919), during which times `(n)o one would question but that a government might prevent actual obstruction to its recruiting service or the publication of the sailing dates of transports or the number and location of troops.' Near v. Minnesota ex rel. Olson, 283 U.S. 697, 716, 51 S.Ct. 625, 631, 75 L.Ed. 1357 (1931). Even if the present world situation were assumed to be tantamount to a time of war, or if the power of presently available armaments would justify even in peacetime the suppression of information that would set in motion a nuclear holocaust, in neither of these actions has the Government presented or even alleged that publication of items from or based upon the material at issue would cause the happening of an event of that nature. `(T)he chief purpose of (the First Amendment's) guaranty (is) to prevent previous restraints upon publication.' Near v. Minnesota ex rel. Olson, supra, at 713, 51 S.Ct., at 630.
New York Times, supra, 403 U.S. at 725, 91 S.Ct. at 2147 (Brennan, J., concurring)(footnotes omitted).
[9] An attorney who disseminates privileged or confidential records, may be held in violation of Rule 4.4 of the Louisiana Rules of Professional Conduct.
[10] At issue in Nebraska Press Association was an order issued by a state trial court judge prohibiting the media from publishing or broadcasting accounts by Defendant to police officers or third parties with respect to a multiple homicide trial.
[11] disclosure of a communication or information covered by the attorney-client privilege or work product protection does not operate as a waiver if the disclosure is inadvertent and is made in connection with litigation or administrative proceedings, and if the person entitled to assert the privilege or work product protection took reasonably prompt measures, once the holder knew of the disclosure, to notify the receiving party of the inadvertence of the disclosure and the privilege asserted. Once notice is received, the receiving party shall either return or promptly safeguard the inadvertently disclosed material, but with the option of asserting a waiver. Even without notice of the inadvertent disclosure from the sending party, if it is clear that the material received is privileged and inadvertently produced, the receiving party shall either return or promptly safeguard the material, and shall notify the sending party of the material received, but with the option of asserting a waiver.
La. C.C.P. art 1424(D).
[12] "This Court has frequently denied that First Amendment rights are absolute and has consistently rejected the proposition that a prior restraint can never be employed." Nebraska Press Ass'n, 427 U.S. at 569, 96 S.Ct. at 2808 (citing New York Times Co. v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971); Organization for a Better Austin v. Keefe, 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971); Near v. Minnesota ex rel. Olson, 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931)).