833 So.2d 1010 (2002)
LHO NEW ORLEANS LM, L.P.,
v.
MHI LEASCO NEW ORLEANS, INC.
No. 2002-CA-0663.
Court of Appeal of Louisiana, Fourth Circuit.
November 20, 2002.
Writ Denied December 19, 2002.
*1011 William M. Bosch, Katten Muchin Zavis Rosenman, Washington, DC, and James A. Budinetz, Morgan, Lewis & Bockius, LLP, McLean, VA, and A. Gregory Grimsal, Martin E. Landrieu, Deborah F. Malveaux, Marcel Garsaud, Jr., Gordon, Arata, McCollam, Duplantis & Eagan, L.L.P., New Orleans, LA, for Plaintiff Appellant, LHO New Orleans LM, L.P.
Bruce V. Schewe, Phelps Dunbar LLP, New Orleans, LA, and Michael S. Elkin, Thomas P. Lane, Gabriel M. Nugent, Thelen Reid & Priest, LLP, New York, NY, for Defendant/Appellee, MHI Leasco New Orleans, Inc.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge CHARLES R. JONES, Judge DAVID S. GORBATY).
DAVID S. GORBATY, Judge.
Parties to this litigation are plaintiff/appellant, LHO New Orleans L.M., L.P., (hereinafter referred to as LaSalle) the owner of the Le Meridien Hotel in New Orleans, and MHI Leaseco New Orleans, Inc. (hereinafter referred to as Meridien), the tenant/operator/manager of the hotel.[1] LaSalle has filed this devolutive appeal in response to an order/judgment of the trial court rendered February 4, 2002, denying LaSalle's motion to stay and enjoin arbitration and motion for preliminary injunction, granting Meridien's motion to consolidate and motion for preliminary injunction, ordering that the case be sent to arbitration, and staying all proceedings until arbitration is complete. For the following reasons, we reverse in part, affirm in part, and lift the stay order.

PROCEEDINGS BELOW:
On February 19, 1998, the parties entered into a lease agreement whereby Meridien would operate and manage the Le Meridien Hotel on Canal Street. In June of 2001, Meridien notified LaSalle that it intended to sell its lease and management interests in the hotel to a third-party. Under the terms of the lease, *1012 LaSalle was entitled to exercise a right of first refusal on the purchase of those interests. The exercise of that right is the basis of the dispute between the parties. After numerous communications between the parties, the parties agreed to disagree and the underlying litigation was commenced.
LaSalle filed a Petition for Declaratory Judgment, Eviction and Injunction on January 11, seeking to declare Meridien to be in default of the lease, and obligating Meridien to vacate the premises and cooperate in the management transition. LaSalle further sought injunctive relief requiring Meridien to assist in an orderly transition, to refrain from any acts injurious to LaSalle, and to vacate the premises.
Meridien excepted to the trial court's jurisdiction on the ground that the matters in dispute were subject to arbitration according to the terms of the lease. Further, Meridien claimed that a mandatory arbitration clause in the lease made LaSalle's petition premature. Meridien also sought a preliminary injunction to prevent LaSalle from interfering with Meridien's management of the hotel, from exercising any default remedies such as eviction, and to toll any time periods purportedly applicable to termination of the lease.
LaSalle responded to Meridien's arbitration claims by filing a motion to stay/enjoin arbitration. All matters were set to be heard on January 23, 2002.
After hearing, the court issued a judgment denying LaSalle's motion to stay and enjoin arbitration and motion for preliminary injunction, granting Meridien's motion for preliminary injunction, and ordering the parties to arbitration to determine the fair market value of Meridien's interests.

DISCUSSION:
The judgment before this Court is a ruling denying LaSalle's motion to stay and enjoin arbitration and its motion for preliminary injunction, and granting Meridien's motion for preliminary injunction.[2] The judgment further stays the proceedings below until such time as arbitration is completed and a fair market value of Meridien's interest is determined.
A preliminary injunction is an interlocutory procedural device designed to preserve the status quo as it exists between the parties pending trial on the merits. Therefore, a trial court has great discretion to grant or deny the relief requested. A to Z Paper Co., Inc. v. Carlo Ditta, Inc., 98-1417, pp. 8-9 (La.App. 4 Cir. 9/9/98), 720 So.2d 703, 708.
The issue of whether or not the language of a contract is ambiguous is an issue of law subject to de novo review on appeal. Lakeland Anesthesia, Inc. v. Cigna HealthCare of Louisiana, Inc., XXXX-XXXX, p. 3 (La.App. 4 Cir. 2/6/02), 812 So.2d 695, 697, quoting Bartlett Const. Co., Inc. v. St. Bernard Parish Council, 99-1186 (La.App. 4 Cir. 5/31/00), 763 So.2d 94, writ denied 2000-2322 (La.11/03/00), 773 So.2d 142. The trial court's interpretation of a contract is subject to the manifest error rule. Id. The manifest error rule provides that an appeals court may not simply substitute its own view of the evidence for the trial court's view, nor may it disturb the trial court's finding of fact so long as it is reasonable. Id.
A review of the lease does not reveal any ambiguous language, nor do the parties argue that the lease is ambiguous. As *1013 such, we will not review this matter de novo. However, because no written or oral reasons for judgment were issued, this Court can only infer from the order/judgment that the trial court made the factual finding that no closing could take place prior to the establishment of the fair market value of Meridien's interests. We must also infer that the trial court did not find Meridien to be in default of the lease as La Salle claimed. For this Court to determine if the trial court abused its discretion in granting Meridien's motion and denying LaSalle's, we must review the lease agreement between the parties.
Section 22.22 of the lease agreement between LaSalle and Meridien provides, in pertinent part:
22.22 Change of Control of Tenant. If, during the Term, any Parent or Affiliate (each a "Transferor") of Tenant has elected to transfer its interest in Tenant to a third party which is not an Affiliate of Tenant, which, for the purposes of this Agreement shall only be permitted in conjunction with the sale of all, or substantially all, of Transferor's hotel management businesses (a "Permitted Transfer"), then such Permitted Transfer shall be made only upon the following terms and conditions:
(a) Transferor shall give written notice of the proposed Permitted Transfer to Landlord (the "Sale Notice");
(b) Landlord shall have thirty (30) days from the date of receipt of the Sale Notice to provide Transferor with written notice (the "Purchase Notice") of Landlord's intention to purchase, in Landlord's name or in the name of Landlord's designee, Transferor's interests in Tenant at the then Fair Market Value of such interest (the "Purchase");
* * * * * * * * * * * * * *
(e) The closing of the Purchase, ..., shall occur within sixty (60) days from the later to occur of (x) delivery of the Sale Notice or (y) delivery of the Third Party Notice;
(f) If the parties fail to agree on the Fair Market Value of the respective interests in Tenant, the matter shall be referred to arbitration as provided for in Article 23; provided, however, unless and until the Fair Market Value of the prospective interests in Tenant have been fully determined, Landlord shall have no obligation to complete the Purchase....
Section 23.3 provides, in pertinent part:
23.3 Arbitration Procedures. In any arbitration commenced pursuant to Article 23, a single arbitrator shall be designated and shall resolve the dispute. The arbitrator's decision shall be binding on all parties and shall not be subject to further review or appeal except as otherwise allowed by applicable law. To the maximum extent practicable, the arbitrator and the parties, and the AAA, if applicable, shall take any action necessary to insure that the arbitration shall be concluded within ninety (90) days of the filing of such dispute.
LaSalle argues that, under the terms of the lease, specifically Section 22.22, it is entitled to complete the purchase of Meridien's interests, and take over management of the hotel, prior to establishment of the fair market value of Meridien's interests. LaSalle admits that arbitration is mandated if the parties do not agree on the value; however, it claims that the completion of an arbitration proceeding does not preclude the closing on the purchase. LaSalle also argues that the trial court erred in not finding Meridien in default of the lease, thereby preventing LaSalle from regaining control and occupancy of its hotel.
*1014 Meridien counters that it is entitled to the injunctive relief granted by the trial court pursuant to La.Code Civ. Proc. arts. 3663 and 3601. Pursuant to La. Code Civ. Proc. art. 3663, Meridien is entitled to the peaceful enjoyment of the property that they have possessed for over twenty years. Meridien argues that art. 3663 does not require a showing of irreparable injury for it to be granted injunctive relief. Notwithstanding art. 3663, Meridien claims that it has shown irreparable injury as required by La.Code Civ. Proc. art. 3601, and, therefore, injunctive relief was proper under that article also.
After a thorough review of the lease, we conclude that LaSalle is correct in its assessment that the closing on the purchase can take place prior to determination of the fair market value of Meridien's interests. Section 22.22 provides that LaSalle shall have thirty days from the date of Meridien's Sale Notice to notify Meridien of its intent to purchase Meridien's interest at the "then Fair Market Value of such interest." If the parties do not agree on the fair market value, such value shall be determined by arbitration.
The dispute between the parties lies in the definition of the terms "closing" and "completion of purchase." Meridien contends that because the term "closing" is not defined in the lease, LaSalle is free to interpret "closing" to mean the point at which Meridien must begin assisting with a transition to new management. However, because the lease provides that LaSalle may opt to not "complete the purchase," which term Merdien equates with "closing," if LaSalle is unhappy with the fair market value determined by arbitration, it can choose not to "complete the purchase."
Our interpretation of the lease is based on basic sales principles of Louisiana law. A valid sale requires three elements: the thing sold, the price, and the consent of the parties. La. Civ.Code art. 2439. The price must be fixed by the parties in a sum either certain or determinable through a method agreed by them. There is no sale unless the parties intended that a price be paid. La. Civ.Code art. 2464. It is also well-accepted under Louisiana law that the term "closing" means that the parties have consented to the thing sold and the price, even though the price may be determined at a later date. Therefore, once LaSalle sets a closing date, it is bound to pay whatever price is determined for Meridien's interests. Likewise, under the terms of the lease, on the closing date, Meridien is bound to begin to vacate the premises and to assist in the transition to the new tenant. However, if LaSalle desires to wait until fair market value is determined, it may do so under the provisions of Section 22.22(f). If LaSalle so chooses, the closing cannot take place.
Thus we find that the trial court erred in granting Meridien's preliminary injunction providing that a closing cannot take place until such time as the price of Meridien's interests is determined by arbitration.
We must now consider the actual chain of events that occurred between the parties from June 1, 2001 until the various motions were filed in the trial court to determine if Meridien is in default of the lease.
On June 1, 2001, Robert A. White, Senior Vice President of Le Meridien, notified Michael Barnello, Chief Operating Officer of LaSalle, that Meridien was selling its management interests to a third party. According to the lease, LaSalle had thirty days from receipt of the Sale Notice to exercise an option to purchase the management interests. LaSalle did not exercise this option within the thirty-day period, but sought and was granted extensions in writing from Meridien to exercise the *1015 purchase option. The last extension granted was in a letter from Mr. White to Mr. Barnello dated October 19, 2001. The letter extended the time period to provide a purchase notice to January 31, 2002, and further provided that a closing would take place no later than February 28, 2002. Mr. Barnello signed the letter accepting those terms.
On December 21, LaSalle sent Meridien a letter requesting that Meridien agree to the following: 1) LaSalle would meet with Meridien representatives on January 7, 2002; LaSalle would not notify Meridien prior to that meeting whether it intended to purchase Meridien's interests; 3) LaSalle could tender its Purchase Notice at any time after the January 7 meeting, and terminate the lease. The purchase and termination would not take place sooner than fourteen days or later than thirty days from the date of notice; 4) if LaSalle elected to purchase Meridien's interest, the purchase would be effective regardless of whether a fair market value of the interest had been determined; however, Meridien would not be deemed to have waived its right to have that value determined; and 5) if LaSalle elected to purchase Meridien's interests, Meridien would cooperate with the transition according to the lease agreement. Meredien did not agree to the terms of the letter.
Despite the extension to January 31, on December 28, 2001, Mr. Barnello sent a Purchase Notice letter to Mr. White. The letter indicated that LaSalle intended to exercise its purchase option effective thirty days from December 28. The letter further informed Meridien that LaSalle's designee would succeed to Meridien's rights under the lease. Additionally, on the effective date and upon completion of the purchase, LaSalle and its designee would elect to terminate the lease. The letter further explained that in connection with the purchase and termination, Meridien would be expected to, among other things, surrender the property.
On January 4, 2002, Meridien notified LaSalle that its Purchase Notice letter was not in compliance with the terms of the lease because it failed to include a fair market value of Meridien's interests. Meridien also disputed LaSalle's contentions that the lease and management agreement would terminate on the effective date because no closing could take place without a fair market value being established.
LaSalle responded to Meridien in a January 7, 2002, letter informing Meridien that if it did not cooperate in the transition or vacate the hotel before the effective date, Meridien would be in default of the terms of the lease. The letter further expressed LaSalle's assessment that the fair market value of Meridien's management interests was zero. LaSalle noted that this same information had been included in an attachment to the December 28 Purchase Notice letter. Lastly, LaSalle informed Meridien that even should the parties not agree on LaSalle's fair market value assessment, LaSalle still intended to close the purchase on January 28.
On January 8, Meridien responded denying that it was in default of the lease terms. It also argued that it could not make a counter-assessment of the fair market value of its interests because LaSalle failed to provide any foundation for its assessment. Meridien also accused LaSalle of not negotiating in good faith.
LaSalle proceeded with its intent to take over the hotel and, to that end, sent a letter to Meridien on January 9 attaching switch over guidelines.
As previously stated, we interpret the lease to mean that LaSalle can choose to *1016 close prior to the fair market value of Meridien's interests being established. If LaSalle chooses to close, Meridien must begin vacating the premises and must assist in the orderly transition to the new tenant.
In brief, LaSalle claims that Meridien stated in its October 19 extension letter that a closing would take place within thirty days of the purchase notice, or no later than February 28. However, the record copy of the October 19 letter does not include the "thirty days" language LaSalle claims is in the letter. Section 22.22 of the lease provides that the closing of the purchase shall occur within sixty days from the date of delivery of the Sale Notice; however, the parties waived that stipulation and extended the closing date. Thus the parties were no longer operating under the terms of Section 22.22 as to the closing date, but were instead operating under the terms of the various extension letters. Further, the lease provides in Section 22.15 that a transition shall take place "[u]pon the expiration or termination of the Term of this Agreement." According to LaSalle's December 28 Purchase Notice, the lease would not terminate until the effective date (January 28) and completion of the purchase. The hearing on this matter took place prior to the effective date, and obviously, prior to the completion of the purchase. As such, Meridien was not in default at the time of the hearing because it was not yet required under the terms of the lease to participate in a transition. Section 22.15 does provide that if the lease terminates as a result of an event of default, then the transition procedures of section 22.15 would not apply. However, the only event of default applicable is if a change of control should occur other than as provided by Section 22.22. Meridien was in compliance with Section 22.22 when it properly notified LaSalle of the proposed sale of its interests to a third party. Thus, we find no error in the trial court's finding that Meridien was not in default of the lease.
Accordingly, we reverse the portion of the trial court's judgment issuing a preliminary injunction in favor of Meridien and granting a stay order. We affirm the portion of the judgment ordering that arbitration take place to determine the fair market value of Meridien's interests. Should LaSalle choose to go forward with a closing, such closing shall take place thirty (30) days from the date of this opinion.
REVERSED IN PART; AFFIRMED IN PART; STAY ORDER LIFTED.
NOTES
[1] MHI Leaseco New Orleans, Inc., is a special-purpose entity owned by Meridien Hotels, Inc. For purposes of this appeal, we will refer to all Meridien entities collectively as "Meridien."
[2] The judgment also consolidates another action with the subject case, an issue not relevant to this appeal.