983 So.2d 217 (2008)
LHO NEW ORLEANS LM, L.P.
v.
MHI LEASCO NEW ORLEANS, INC., Meridien Hotels, Inc., Nomura International PLC, Le Meridien Hotels & Resorts, Societe Des Hotels Meridien, Meridien S.A., and Juergen Bartels.
LHO New Orleans LM, L.P.
v.
MHI Leasco New Orleans, Inc., Meridien Hotels, Inc., Nomura International PLC, Le Meridien Hotels & Resorts, Societe Des Hotels Meridien, Meridien S.A. and Juergen Bartels.
Nos. 2006-CA-0489, 2006-CA-1022.
Court of Appeal of Louisiana, Fourth Circuit.
April 16, 2008.
Rehearing Denied June 12, 2008.
*219 William M. Bosch, Steptoe & Johnson LLP, Washington, DC, and A. Gregory *220 Grimsal, Marcel Garsaud, Jr., Martin E. Landrieu, Gordon, Arata, McCollam, Duplantis & Eagan, L.L.P., New Orleans, LA, for Plaintiff/Appellant.
Michael S. Elkin, Thomas P. Lane, Winston & Strawn LLP, New York, NY, and Bruce V. Schewe, Phelps Dunbar L.L.P., New Orleans, LA, for Defendants/Appellees.
Court composed of Judge CHARLES R. JONES, Judge MICHAEL E. KIRBY, Judge DAVID S. GORBATY.
MICHAEL E. KIRBY, Judge.
Plaintiff, LHO New Orleans LM, L.P. (hereinafter referred to as "La Salle") appeals two trial court judgments in favor of defendants, Meridien Hotels, Inc. and MHI Leasco New Orleans, Inc. (hereinafter collectively referred to as "Meridien"). One of the judgments appealed from included a determination and award of fair market value of Meridien's interests in Le Meridien Hotel in New Orleans, and the other judgment involved an award of attorney's fees, costs, expenses and administrative fees.
LaSalle is the owner of the hotel located at 614 Canal Street in New Orleans and formerly operated under the name Le Meridien Hotel. Meridien was the tenant/operator/manager of this hotel. As used in the agreements and correspondence relative to this appeal, "Landlord" refers to LaSalle, "Tenant" refers to MHI Leasco New Orleans, Inc. and "Manager" refers to Meridien Hotels, Inc.
On February 19, 1998, the parties entered into a lease agreement whereby Meridien would operate and manage Le Meridien Hotel on Canal Street. On June 1, 2001, Mr. Robert White, Meridien Senior Vice President, sent a letter to Mr. Michael Barnello, LaSalle Chief Operating Officer, stating that Meridien intended to sell its lease and management interests in the hotel to a third-party, that the transaction was a Permitted Transfer for purposes of Section 22.22 of the 1998 lease agreement and that the June 1, 2001 letter constituted a Sales Notice under Section 22.22(a) of the lease agreement.
On October 19, 2001, Mr. White sent another letter to Mr. Barnello. In that letter, Mr. White referred to the February 19, 1998 lease agreement and the June 1, 2001 Sales Notice advising LaSalle of a Permitted Transfer and identifying the related Transferor pursuant to Section 22.22(a) of the lease agreement. The letter further stated:
This is to confirm our agreement that (i) notwithstanding the provisions of Section 22.22(b) of the Agreement, the time period within which Landlord must provide Transferor with any Purchase Notice it may elect to give in response to such Sale Notice is hereby extended to January 31, 2002, (ii) notwithstanding the provisions of Section 22.22(e) of the Agreement, the closing of any Purchase pursuant to any such Purchase Notice shall occur not later than February 28, 2002, (iii) any such Purchase Notice shall be given to Transferor c/o Tenant in the manner and at Tenant's address set forth in Section 22.10 of the Agreement and (iv) the provisions hereof shall be limited solely to the above-referenced Sale Notice and Permitted Transfer and shall not be deemed a waiver of Tenant's or Landlord's right to full performance of the terms and conditions of the Agreement with respect to any future transactions.
This letter concluded with a statement asking Mr. Barnello to sign and return a copy of the letter, if it correctly set forth the understanding between the parties. A copy of the letter shows that Mr. Barnello *221 signed in the space provided for his signature.
Because LaSalle did not want to do business with the third party to whom Meridien was selling its interests, LaSalle sought to exercise its right of first refusal under the lease. In a letter dated December 28, 2001, from Mr. Barnello to Mr. White, Mr. Barnello referred to the June 1, 2001 Sales Notice and to the October 19, 2001 letter agreement between the parties in which the parties extended the outside date for delivery of the Purchase Notice to January 31, 2002. Mr. Barnello stated in the December 28, 2001 letter that, "[t]his letter shall constitute, in accordance with Section 22.22 of the Lease, the Purchase Notice from Landlord to Tenant of Landlord's election to exercise the Purchase effective as of thirty (30) days from the date hereof (the `Effective Date')." Mr. Barnello further stated that Meridien's management agreement with LaSalle would be terminated on the Effective Date. Mr. Barnello delineated several obligations required of Meridien under the lease and management agreements including, but not limited to, surrendering the leased property on the Effective Date and making all payments of rent and additional charges through the Effective Date.
On January 4, 2002, Mr. Michael Elkin, an attorney representing Meridien, sent a letter to Mr. Barnello in response to his December 28, 2001 letter to Mr. White. After noting that Mr. Barnello's December 28, 2001 letter purported to constitute a Purchase Notice with respect to Meridien's interest in MHI Leasco New Orleans, Inc., and to establish an Effective Date for a transfer of MHI Leasco New Orleans, Inc.'s rights under the lease referred to in the notice, Mr. Elkin stated that the December 28, 2001 letter failed to comply with the express terms of the lease. Mr. Elkin stated that pursuant to Section 22.22(b) of the lease, LaSalle is required to provide notice of its intent to purchase Meridien's interest in MHI Leasco New Orleans, Inc. at the then fair market value of such interest. Mr. Elkin's letter further states that LaSalle "failed to specify the fair market value upon which an intended purchase must be premised, and without an agreement or arbitral determination of fair market value no closing of such purchase can occur." The letter notes that while LaSalle purports to terminate the lease as well as the management agreement, "such terminations (and any corresponding transition) cannot occur until the closing of LaSalle's purchase of Meridien's interest in the Tenant, which in turn cannot occur until a fair market value has been established. Mr. Elkin specified that the January 4, 2002 letter did not constitute an agreement by Meridien that the lease permits the purported exercise of purchase rights pursuant to the December 28, 2001 notice letter.
On January 11, 2002, Mr. Barnello sent a letter to Mr. White, which stated as follows, in pertinent part:
This letter will serve as Notice of Default and termination pursuant to Sections 12.1 and 21.11 of the Lease arising from a Change of Control of Tenant other than as provided in Section 22.22. Tenant is in default based upon, inter alia, its failure to recognize Landlord's rights under Section 22.22, its failure to cooperate in the orderly transition of the Hotel, and its stated intention not to vacate and surrender the Hotel on the Effective Date set forth in Landlord's Purchase Notice.
In response to Mr. Barnello's January 11, 2002 letter to Mr. White, Mr. Elkin sent a letter on the same day to counsel for LaSalle, Mr. William Bosch. His response stated that LaSalle failed to comply with the terms of the lease, and as a *222 result, Meridien did not anticipate any transition on January 28, 2002. Mr. Elkin stated Meridien's position that until the terms of the lease are satisfied, LaSalle's demands are premature. The letter further requested that Mr. Bosch instruct his clients to cease and desist from contacting any Meridien New Orleans employees concerning LaSalle's proposed transition.
In an earlier appeal in this litigation, this Court in LHO New Orleans LM, L.P. v. MHI Leasco New Orleans, Inc., XXXX-XXXX (La.App. 4 Cir. 11/20/02), 833 So.2d 1010, set forth the procedural history of this case as of that time as follows:
On February 19, 1998, the parties entered into a lease agreement whereby Meridien would operate and manage the Le Meridien Hotel on Canal Street. In June of 2001, Meridien notified LaSalle that it intended to sell its lease and management interests in the hotel to a third-party. Under the terms of the lease, LaSalle was entitled to exercise a right of first refusal on the purchase of those interests. The exercise of that right is the basis of the dispute between the parties. After numerous communications between the parties, the parties agreed to disagree and the underlying litigation was commenced.
LaSalle filed a Petition for Declaratory Judgment, Eviction and Injunction on January 11, seeking to declare Meridien to be in default of the lease, and obligating Meridien to vacate the premises and cooperate in the management transition. LaSalle further sought injunctive relief requiring Meridien to assist in an orderly transition, to refrain from any acts injurious to LaSalle, and to vacate the premises.
Meridien excepted to the trial court's jurisdiction on the ground that the matters in dispute were subject to arbitration according to the terms of the lease. Further, Meridien claimed that a mandatory arbitration clause in the lease made LaSalle's petition premature. Meridien also sought a preliminary injunction to prevent LaSalle from interfering with Meridien's management of the hotel, from exercising any default remedies such as eviction, and to toll any time periods purportedly applicable to termination of the lease.
LaSalle responded to Meridien's arbitration claims by filing a motion to stay/enjoin arbitration. All matters were set to be heard on January 23, 2002.
After hearing, the court issued a judgment denying LaSalle's motion to stay and enjoin arbitration and motion for preliminary injunction, granting Meridien's motion for preliminary injunction, and ordering the parties to arbitration to determine the fair market value of Meridien's interests.
Id., XXXX-XXXX, pp. 1-3; 833 So.2d at 1011-1012.
In the 2002 appeal, this Court reviewed the lease agreement between the parties in order to determine whether the trial court abused its discretion in denying LaSalle's motion for preliminary injunction, granting Meridien's motion for preliminary injunction and staying the proceedings until the completion of arbitration and determination of the fair market value of Meridien's interests. The trial court judgment at issue was rendered on February 4, 2002. Section 22.22 of the lease agreement provides, in pertinent part:
22.22 Change of Control of Tenant. If, during the Term, any Parent or Affiliate (each a "Transferor") of Tenant has elected to transfer its interest in Tenant to a third party which is not an Affiliate of Tenant, which, for the purposes of this Agreement shall only be permitted in conjunction with the sale of all, or *223 substantially all, of Transferor's hotel management businesses (a "Permitted Transfer"), then such Permitted Transfer shall be made only upon the following terms and conditions:
(a) Transferor shall give written notice of the proposed Permitted Transfer to Landlord (the "Sale Notice");
(b) Landlord shall have thirty (30) days from the date of receipt of the Sale Notice to provide Transferor with written notice (the "Purchase Notice") of Landlord's intention to purchase, in Landlord's name or in the name of Landlord's designee, Transferor's interests in Tenant at the then Fair Market Value of such interest (the "Purchase");
* * *
(e) The closing of the Purchase, . . ., shall occur within sixty (60) days from the later to occur of (x) delivery of the Sale Notice or (y) delivery of the Third Party Notice;
(f) If the parties fail to agree on the Fair Market Value of the respective interests in Tenant, the matter shall be referred to arbitration as provided for in Article 23; provided, however, unless and until the Fair Market Value of the prospective interests in Tenant have been fully determined, Landlord shall have no obligation to complete the Purchase. . . .
This Court found that LaSalle was correct in its position that the closing on the purchase could take place prior to the determination of the fair market value of Meridien's interests. Applying basic sales principles of Louisiana law, this Court found that the trial court erred in granting Meridien's preliminary injunction preventing a closing from taking place until such time as the price of Meridien's interests were determined by arbitration. This Court offered the following reasons for this conclusion:
It is also well-accepted under Louisiana law that the term "closing" means that the parties have consented to the thing sold and the price, even though the price may be determined at a later date. Therefore, once LaSalle sets a closing date, it is bound to pay whatever price is determined for Meridien's interests. Likewise, under the terms of the lease, on the closing date, Meridien is bound to begin to vacate the premises and to assist in the transition to the new tenant. However, if LaSalle desires to wait until fair market value is determined, it may do so under the provisions of Section 22.22(f). If LaSalle so chooses, the closing cannot take place.

LHO New Orleans LM, L.P. v. MHI Leasco New Orleans, Inc., XXXX-XXXX, p. 7, (La.App. 4 Cir. 11/20/02), 833 So.2d 1010, 1014.
In the 2002 appeal, LaSalle also argued that the trial court erred in not finding Meridien in default of the lease, thereby preventing LaSalle from regaining control and occupancy of its hotel. In making this determination, this Court considered the chain of events that occurred between the parties from June 1, 2001 until various motions were filed in the trial court. This Court noted that despite the fact that the October 19, 2001 letter from Mr. White to Mr. Barnello extended the time period for LaSalle to provide a Purchase Notice to January 31, 2002, Mr. Barnello, on behalf of LaSalle, sent a Purchase Notice letter to Mr. White on December 28, 2001. That letter indicated that LaSalle intended to exercise its purchase option effective thirty days from December 28, 2001. According to that notice, the lease would not terminate until the Effective Date (January 28, 2002) and completion of purchase.
*224 The hearing on the parties' requests for injunctive relief was held on January 23, 2002. This Court noted that this hearing date was prior to the Effective Date, and obviously, prior to the completion of the purchase. Accordingly, this Court found that Meridien was not in default at the time of the hearing because it was not yet required under the terms of the lease to participate in a transition. (Emphasis ours). This Court reversed the trial court's issuance of a preliminary injunction in favor of Meridien, lifted the trial court's stay order and affirmed the portion of the judgment ordering that arbitration take place to determine the fair market value of Meridien's interest. This Court further held that if LaSalle chose to go forward with a closing, such closing was to take place thirty (30) days from the date of this Court's opinion, which was rendered on November 20, 2002.
Following this Court's 2002 opinion, the closing took place on December 20, 2002 and the parties completed arbitration as ordered. Meridien filed motions to confirm the arbitration panel's decision and to certify the judgment as final. The trial court granted both motions, and LaSalle appealed. On appeal, this Court affirmed the trial court's certification of the judgment as appealable, but reversed the judgment in all other respects, finding that the arbitrators exceeded their authority in ordering LaSalle to pay certain sums to Meridien rather than simply determining fair market value and certain other financial issues set forth by the parties. LHO New Orleans LM, L.P. v. MHI Leasco New Orleans, Inc., XXXX-XXXX (La.App. 4 Cir. 3/3/2004), 869 So.2d 304. This Court remanded the matter to the trial court for further proceedings.
On remand, the matter came for trial on February 14, 2005. The trial court held that Meridien was not in default of its lease with LaSalle, and rendered judgment in favor of Meridien and against LaSalle. The court ordered LaSalle to pay Meridien fair market value for its interests, which the court calculated to be $8,572,000.00 plus legal interest from the date of demand. The court further dismissed Meridien's claim for fraud and LaSalle's reconventional demand.
In reasons for judgment, the trial court stated that it found no merit in LaSalle's claim that Meridien defaulted on the lease because the court found that this Court determined that issue in Meridien's favor in the 2002 opinion, and that this is now the "law of the case." The court cited this Court's holding that "Meridien was not in default at the time of the hearing because it was not yet required under the terms of the lease to participate in a transition." The trial court further found that when this Court gave LaSalle the option to go forward with the purchase and closing no later than December 20.2002, Meridien's obligation to begin to vacate the premises and assist in the transition to the new tenant only arose as of that date. Therefore, the trial court found that Meridien was not in default between January 28, 2002 and December 20, 2002, and dismissed LaSalle's claim for default, holdover rent, attorney's fees, disgorgement and its reconventional demands.
The trial court also determined the fair market value of Meridien's subleasehold interest at $3,639.000.00, the security deposit at $2,212,000.00 and the management interest at $2,721,000.00. The court dismissed Meridien's fraud claim, which was based on Meridien's contention that LaSalle fraudulently induced it to enter into the letter extension agreements that extended LaSalle's time to decide whether to pursue its right to purchase MHI Leasco. The trial court found that the parties were in earnest negotiations, and that *225 there was no evidence to suggest that LaSalle had the intent to defraud Meridien. Regarding LaSalle's claim for damages for wrongful injunction, the trial court did not award any damages because of its finding that LaSalle did not suffer any damages from the wrongful issuance of the injunction because Meridien continued to pay base rents and participating rents until the December 20, 2002 closing. Additionally, the trial court stated LaSalle could not have closed prior to December 20, 2002 because the January 28, 2002 closing date passed before this Court rendered its decision on the injunction obtained in response to LaSalle's setting of January 28, 2002 as the closing date, and that decision set December 20, 2002 as the closing date.
In a separate judgment, the trial court granted Meridien's motion for attorney's fees, costs, expenses and administrative fees. The court awarded Meridien attorney's fees of $3,440,356.80, expert fees, costs and expenses of $642,709.35 and administrative fees of $47,425.00. This award was made to Meridien based on the trial court's ruling that Meridien prevailed on its suit to determine its rights under the lease. The trial court cited Section 22.19 of the lease, which provides that "if either Landlord or Tenant retains an attorney to enforce the terms of or determine rights under this Agreement, the prevailing party shall be entitled to recover reasonable costs, attorney's fees and expenses."
On appeal, LaSalle first argues that the trial court misinterpreted this Court's 2002 decision when it ruled that LaSalle's claims of default under Sections 12.1(m) and 21.11 of the lease were decided by this Court in that decision. Meridien claims that the trial court properly found that this Court has already rejected LaSalle's default theories in the 2002 appeal, and that the "law of the case" doctrine prevents this issue from being reconsidered.
In its judgment, the trial court stated that Meridien was not in default of the lease with LaSalle. In its reasons for judgment, the trial court stated that this Court already ruled on the issue of whether Meridien was in default for its failure to go to closing on January 28, 2002. We initially note that reasons for judgment are not controlling and do not constitute the judgment of the court. Kaufman v. Adrian's Tree Service, Inc., 2000-2381, p. 3 (La.App. 4 Cir. 10/31/01), 800 So.2d 1102, 1104. Having said that, we disagree with the trial court's finding that this Court already decided in its 2002 opinion that Meridien was not in default for failure to go to closing on January 28, 2002.
As stated above, the 2002 appeal involved the review of the judgment granting Meridien's motion for preliminary injunction. The events and dates leading up to the granting of injunctive relief in favor of Meridien are critical in our determination of whether or not the trial court erred in finding that this Court in its 2002 decision decided that Meridien was not in default for its failure to go to closing on January 28, 2002 and vacate the hotel. The following is a summary of those events and dates:
December 28, 2001  LaSalle sends Meridien a "Purchase Notice" and sets January 28, 2002 as the "Effective Date" for the closing.
January 4, 2002  Meridien sends a letter to LaSalle stating its position that LaSalle's December 28, 2001 notice failed to comply with the terms of the lease, and that a closing could not occur until the fair market value of Meridien's interests had been established.
January 11, 2002  LaSalle sends Meridien a Notice of Default and Termination *226 due to Meridien's stated intention not to go to closing or vacate the hotel on January 28, 2002. LaSalle also files a lawsuit seeking Meridien's compliance with the lease, and requesting injunctive relief toward that end.
January 15, 2002  Meridien filed a motion for injunctive relief, requesting that LaSalle be enjoined from interfering with Meridien's operation of the hotel, from exercising any default remedies and asking that any time period running from the purported notice of termination be tolled.
January 23, 2002  Hearing held in the trial court on requests for injunctive relief by both parties.
January 28, 2002  Effective Date for closing set by LaSalle passes with no closing taking place and without Meridien taking any steps to vacate the hotel.
February 4, 2002  Trial Court rendered judgment denying LaSalle's request for injunctive relief, granting Meridien's request for preliminary injunction and ordering the parties to arbitration to determine the fair market value of Meridien's interests.
In reviewing LaSalle's argument in the 2002 appeal regarding the trial court's finding that Meridien was not in default of the lease, this Court stated that it was considering "the actual chain of events that occurred between the parties from June 1, 2001 until the various motions were filed in the trial court." This Court found that because the hearing on the motions for injunctive relief (held on January 23, 2002) took place prior to the Effective Date (January 28, 2002), "Meridien was not in default at the time of the hearing because it was not yet required under the terms of the lease to participate in a transition." (Emphasis ours). This Court further stated that Meridien was in compliance with Section 22.22 when it properly notified LaSalle of the proposed sale of its interests to a third party, and found no error in the trial court's finding that Meridien was not in default of the lease.
A careful reading of this Court's 2002 opinion in this matter reveals that this Court did not address, much less decide, the issue of whether Meridien was in default of the lease for failure to go to closing on January 28, 2002 and vacate the hotel. On the issue of default, only the events leading up to January 23, 2002, the date of the hearing on the motions for injunctive relief, were properly before this Court in the 2002 appeal. The fact that the 2002 appeal decision was rendered after January 28, 2002 is irrelevant. Because that appeal only considered events occurring up to January 23, 2002, the issue of default regarding the closing date of January 28, 2002 was not considered by this Court and was not even ripe for this Court's consideration. Therefore, this Court did not make a determination in its 2002 decision about whether Meridien was in default of the lease for failing to close on January 28, 2002, and the trial court's statement to the contrary in its reasons for judgment is erroneous.
LaSalle's next argument is that Meridien violated Section 22.22 of the lease when it failed to close on January 28, 2002 and vacate the hotel. Specifically, LaSalle argues that Meridien's Change of Control was an Event of Default under the lease, resulting in the lease being terminated and Meridien not being entitled to fair market value for its interests.
Section 1.21 of the Lease Agreement defines "Change of Control" as follows:
"Change of Control" shall mean the sale, conveyance, assignment, encumbering, pledging, hypothecation, granting a security interest in, granting of *227 options with respect to, or other disposition of (directly or indirectly, voluntarily or involuntarily, by operation of law or otherwise, and whether or not for consideration) of any class of partnership interests, stock or other equity interests in a Person (other than among existing holders of interests in such Person on the Commencement Date and/or family members of such holders and/or trusts for the benefit of any of the foregoing) that, upon a transfer of any portion thereof, will create in the transferee thereof, directly or indirectly, a majority of any class of partnership interest, stock or other equity interests of such Person.
Section 12.1 states, in pertinent part:
Events of Default. The occurrence of any one or more of the following events shall constitute an "Event of Default" hereunder:
* * *
(m) should a Change of Control of Tenant or Manager occur other than as provided in Sections 22.22 or 5.4 respectively.
* * *
then, and in any such event, Landlord, in addition to all other remedies available to it, may terminate this Agreement by giving Notice thereof to Tenant and upon the expiration of the time, if any, fixed in such Notice, this Agreement shall terminate and all rights of Tenant under this Agreement shall cease. Landlord shall have and may exercise all rights and remedies available at law and in equity to Landlord as a result of Tenant's breach of this Agreement.
As stated above, LaSalle's Notice of Default and Termination, sent to Meridien on January 11, 2002, stated that this notice was sent pursuant to Sections 12.1 and 21.11 of the lease arising from a Change of Control of Tenant other than as provided in Section 22.22. Both Sections 12.1(m) and 21.11(b) include language regarding LaSalle's right to terminate the lease in the event of a Change of Control other than as provided in Section 22.22.
Section 21.11(b), provides as follows, in pertinent part:
Upon the occurrence of . . . (iv) a Change of Control in Tenant (other than as provided in Section 22.22) . . . Landlord shall have the right, at Landlord's option, to terminate this Agreement upon thirty (30) days Notice to Tenant, in which event this Agreement and the Management Agreement shall terminate and Tenant shall immediately surrender the Leased Property to Landlord after the expiration of such 30 day period, and, if Tenant fails to so surrender, Landlord shall have the right, without notice, to enter upon and take possession of the Leased Property and to expel or remove Tenant and its effects without being liable for prosecution or any claim for damages therefor.
Although later found by this Court to be wrongfully issued, the injunction in Meridien's favor was issued on February 4, 2002, several days after the scheduled closing date of January 28, 2002. LaSalle's Notice of Default and Termination was sent to Meridien on January 11, 2002, less than 30 days prior to the granting of the injunction. Therefore, the 30 day notice period had not elapsed when the trial court granted the injunction in Meridien's favor on February 4, 2002. Because the trial court stayed all proceedings at that time, Meridien argues that it cannot be found in default of the lease for failure to close on January 28, 2002 and vacate the hotel. We agree.
*228 Despite the fact that the injunction was wrongfully issued, the parties were bound to obey it during the time it was in effect. HCNO Services, Inc. v Secure Computing Systems, Inc., 96-1753, 96-1693 (La.App. 4 Cir. 4/23/97), 693 So.2d 835, 846. The injunction remained in effect through the issuance of this Court's appeal decision rendered on November 20, 2002, and in that opinion, this Court gave LaSalle the option of going to closing no later than 30 days from the date of that opinion, or December 20, 2002. The sale took place on December 20, 2002, and the lease remained in effect until that date. Thus, Meridien was not in default of the lease for failing to go to closing on January 28, 2002 and vacate the hotel.[1]
LaSalle's next argument is that the trial court erred in denying it claims for damages for wrongful injunction, conversion and trespass due to Meridien's allegedly wrongful holdover from January 28, 2002 through December 20, 2002. The lease allows for an award of holdover rent if Meridien remained in the hotel after the expiration of the lease. But the lease was still in effect until December 20, 2002, the date of the closing, because the February 4, 2002 injunction preserved the status quo of the parties, and the injunction was issued prior to the expiration of the 30 day notice period allowed to Meridien under Section 21.11(b). Thus, the trial court correctly denied LaSalle's claims for damages for conversion and trespass because Meridien was justified in remaining at the hotel from January 28, 2002 through December 20, 2002.
As stated above, this Court in its 2002 decision found the February 4, 2002 injunction in Meridien's favor to be wrongfully issued. LaSalle argues that it is entitled to damages for that wrongful issuance, including damages for net tenant income and disgorgement of management *229 fees, in addition to attorney's fees incurred in the dissolution of the preliminary injunction. The trial court did not award damages for wrongful issuance of the injunction, finding that such an award is discretionary. The trial court found that LaSalle did not suffer any damages from the wrongful issuance of the injunction because Meridien continued to pay base rents and participating rents through the date of the sale. La. C.C.P. article 3608 provides that the award of damages for the wrongful issuance of a preliminary injunction is discretionary on the part of the trial court. Although the injunction was wrongfully issued, we find no abuse of the trial court's discretion in failing to award damages for this wrongful issuance.
LaSalle also argues that the trial court erred in making its own determination of the fair market value of Meridien's interests after the 2005 trial on remand. As stated above, this Court, in its 2004 decision, remanded this matter for trial after finding that the arbitrators exceeded their authority in ordering LaSalle to pay certain sums to Meridien rather than simply determining fair market value and other financial issues set forth by the parties. The trial court did not adopt the arbitration panel's determination or order that the matter be sent back to arbitration with a December 20, 2002 valuation date. Instead, the trial court reached its own determination on the fair market value of Meridien's interests. LaSalle contends that the trial court erred in doing so, and we agree.
Section 22.22(f) states, in pertinent part:
If the parties fail to agree on the Fair Market Value of the respective interest in Tenant, the matter shall be referred to arbitration as provided for in Article 23.
Section 23 sets forth the procedures to be followed by the parties in the arbitration process.
We find that the trial court was without authority in making its own determination of the fair market value of Meridien's interests. While Meridien is entitled to fair market value for its interests, the parties are bound by the terms of the lease agreement between them. The lease agreement requires that if the parties cannot agree, as in this case, the fair market value of Meridien's interest is to be determined in arbitration. Because the valuation of the arbitration panel submitted into evidence at the 2005 trial was prepared with an effective date of December 28, 2001, the matter must be resubmitted to an arbitration panel for a determination of fair market value using a December 20, 2002 valuation date. We vacate the portion of the trial court judgment determining the fair market value of Meridien's interests, and awarding that amount plus interest from date of the demand, and order that the matter be referred to arbitration for determination of fair market value using a December 20, 2002 valuation date.
Finally, LaSalle argues that the trial court erred in its award of attorney's fees to Meridien. LaSalle argues that the trial court erred in awarding all of Meridien's legal fees and expenses, including fees for two appeals that Meridien lost and fees that the arbitration panel denied. LaSalle also argues that the hourly rates charged by Meridien's attorneys are not reasonable under Louisiana law, and should be reduced.
Section 22.19 of the lease states:
If either Landlord or Tenant retains an attorney to enforce the terms of or determine rights under this Agreement, the prevailing party shall be entitled to recover reasonable costs, attorney's fees and expenses.
The trial court awarded Meridien $4,130,491.15 in attorney's fees, costs, expenses and administrative fees. While we *230 find it was within the trial court's discretion to accept the hourly rate charged by Meridien's attorneys, we also find that the trial court abused its discretion in its blanket award of all of Meridien's attorney's fees, costs, expenses and administrative fees, including those incurred for portions of the litigation on which Meridien did not prevail. Meridien is entitled to an award of attorney's fees, costs, expenses and administrative fees based on the fact that it has prevailed on the main issues in this litigation, i.e., that it did not default on the lease and that it is, therefore, entitled to fair market value for its interests. However, because Meridien did not prevail on all issues in this litigation, the award of all of its fees incurred must be reduced. See, Master Credit Corp. v. Campbell & Associates, Inc., 98-0349 (La.App. 4 Cir. 11/25/98), 724 So.2d 266.
Meridien should not have been awarded any fees, costs or expenses associated with obtaining its wrongfully issued injunction and with defending LaSalle's efforts to dissolve the injunction, both at the trial court and appellate levels. In accordance with the terms of the lease, Meridien's entitlement to fees, costs and expenses is limited to items on which it prevailed in enforcing the terms or determining its rights under the lease. As stated above, Meridien obtained an injunction, which protected it from being found in default of the lease, but this injunction was later found by this Court to be wrongfully issued. Although we find no abuse of the trial court's discretion in not awarding damages for the wrongful issuance of the injunction, we do not find it reasonable to allow an award of attorney's fees, costs and expenses to Meridien for work associated with this injunction.
Additionally, there are other portions of this litigation upon which Meridien has not prevailed, including some items related to the arbitration process. The transcript of the fee hearing in this matter shows that Meridien's evidence on the issue of fees was presented only in very general terms, without any specific evidence as to which fees represented different aspects of the litigation. The billing records introduced as exhibits are detailed, but even with the detail provided, we find it impossible to determine with specificity which fees were related to the portions of the litigation on which Meridien did not prevail. Thus, we find it would be a vain and useless act to remand this matter to the trial court for such a ruling. Accordingly, we will reduce the award of attorney's fees, costs, expenses and administrative fees to the highest amount that a reasonable factfinder could have awarded given the particular circumstances of this case. We find that reducing the fee award by one-third of the amount awarded by the trial court is reasonable. Therefore, we are amending the judgment below to reduce the total fee award to $2,753,660.77.
Accordingly, for the reasons stated above, we affirm the trial court judgment insofar as it held that Meridien was not in default of the lease. We vacate the trial court's determination and award of fair market value of Meridien's interests, and order that this matter be sent back to arbitration for a recalculation of the fair market value of Meridien's interests using December 20, 2002 as the date the lease terminated. We reduce the award of attorney's fees, costs, expenses and administrative fees to $2,753,660.77, and amend the judgment accordingly. In all other respects, the trial court judgment is affirmed.
AMENDED IN PART, AND AS AMENDED, AFFIRMED; VACATED IN PART WITH ORDER.
NOTES
[1] Under the particular circumstances of this case, the 30 day notice period allowed under Section 21.11(b), along with other factors, precludes a finding of default on the part of Meridien. Although our holding makes the issue of default under Section 12.1(m) moot, we note that without the 30 day notice provision in Section 21.11(b), LaSalle's argument that Meridien's decision not to go to closing on January 28, 2002 constituted an Event of Default under Section 12.1(m) of the lease would have merit. Under Section 12.1(m) alone, the failure to close would have resulted in a Change of Control other than as provided in Section 22.22 of the lease, and would have allowed LaSalle to terminate the lease.

LaSalle issued its termination notice to Meridien on January 11, 2002, informing Meridien that the lease would terminate if Meridien did not vacate the hotel on January 28, 2002. The 30 day cure period under Section 12.1(c) would have no application in this case because Section 12.1(c) does not apply to defaults under clauses (a) and (b) and (d) through (s) of Section 12.1. LaSalle's allegations of default on the part of Meridien under Section 12.1 involve clause (m), so the cure period under Section 12.1(c) would not have prevented a finding of default on the part of Meridien.
Furthermore, without the protection afforded to Meridien by the 30 day notice provision of Section 21.11(b), Meridien's failure to go to closing on January 28, 2002 would have resulted in termination of the lease under Section 12.1(m) because Meridien would not have complied with all of its obligations under Section 22.22. In order for Meridien's transfer of its interests to be a Permitted Transfer under Section 22.22, the transfer must involve "the sale of all, or substantially all, of Transferor's hotel management businesses," and must be made only upon the terms and conditions set forth in Section 22.22. While it is undisputed that Meridien's proposed transfer of its interests to a third party involved all or substantially all of Meridien's hotel management business, Meridien's refusal to close on the purchase on the date specified by LaSalle in its purchase notice would have constituted non-compliance with the terms and conditions set forth in Section 22.22, specifically Section 22.22(e). At that point, the proposed transfer of its interests would have no longer qualified as a Permitted Transfer under the lease.